[L. A. No. 3490. Department Two.—June 30, 1915.]

ANNIE E. EVANS, Respondent, v. J. P. SPARKS, J. P. SPARKS as Administrator of the Estate of H. S. Sparks, Deceased, and GRACE C. SPARKS, Appellants.

FRAUDULENT TRANSFER—DEED BY FATHER TO SON WITHOUT CONSIDERATION—PROOF OF FRAUD—SCRUTINY BY THE COURT.—A deed of trust by a father who was heavily indebted, to his adult son, without consideration, is not in itself fraudulent, but it calls for the watchful scrutiny of the court.

ID.—INSOLVENCY OF TRANSFERER—FINDING NOT SUPPORTED BY EVIDENCE. In an action by a creditor to set aside such a conveyance proof that the assets retained by the grantor, since deceased, subsequently became valueless, does not compel the conclusion that the transfer was fraudulent and that the grantor was insolvent, and in this case the evidence is held not to support a finding of a fraudulent transfer.

ID.—FAILURE OF ASSETS AFTER TRANSFER.—Where the decedent owed fifteen thousand dollars and had assets of a nominal value of twenty-six thousand dollars remaining after a transfer of certain stock to his wife, the fact that some of those assets did not produce money later on is not conclusive of fraudulent intent accompanying the transfer to the wife.

ID.—TIME AT WHICH FRAUDULENT INTENT MUST EXIST.—The question of whether such transfer of stock is fraudulent should be determined as of the time at which the transferee has obtained exclusive control over it, notwithstanding that the transferer retains custody over the stock and, as the party in charge of the wife's affairs, later hypothecated it to secure his own debts.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. W. B. Wallace, Judge presiding.

The facts are stated in the opinion of the court.

George L. Keefer, for Appellants.

Thorpe & Hanna, and Moore & Finkenstein, for Respondent.

MELVIN, J.—Defendants appeal from an order of the superior court denying their motion for a new trial.

During the lifetime of H. S. Sparks he made a deed of trust of certain property to his son J. P. Sparks and later he

assigned to his wife, Grace C. Sparks, a number of shares of the capital stock of a corporation. Annie E. Evans, who was a creditor of H. S. Sparks, sued to set aside the assignment and the trust-deed upon the ground that each was made by H. S. Sparks in contemplation of insolvency with intent to hinder, delay, and defraud his creditors and that the trustee and assignee accepted the purported trust and alleged assignment, respectively, with like fraudulent intent.

The court found that H. S. Sparks died on the fifteenth day of May, 1911; that the allowed and approved claims against his estate, including that of Annie E. Evans for something over five thousand dollars, amounted to more than eleven thousand dollars, while the assets were slightly in excess of one thousand dollars; that on the sixth day of August, 1908, H. S. Sparks, in contemplation of insolvency and with intent to delay and defraud his existing and subsequent creditors, including the plaintiff, conveyed to J. P. Sparks certain personal and real property, part of which the latter had sold for prices aggregating more than one thousand dollars; that certain described parcels were still held by the said J. P. Sparks; that the conveyance was accepted by J. P. Sparks with knowledge of the fraudulent intent of H. S. Sparks; that the conveyance was made without consideration; and that it left the said H. S. Sparks insolvent and without sufficient property to pay his then existing creditors. The court also found that although the conveyance purported to transfer the real and personal property for trust purposes this was done as a pretext to aid in the fraud; and that it was not true, as alleged in the answer, that the purpose of the conveyance was to reimburse the children of said Sparks by his first wife for moneys received by him from their mother and invested by him.

The findings with reference to the transaction between H. S. Sparks and his second wife were, in brief, that he had made a purported transfer to her of thirty thousand shares of the capital stock of the Mutual Laundry Company (a corporation) on April 21, 1910, but that such assignment was "not completed, or made in fact, until the 12th day of May, 1911"; that at the time of said transfer the stock had been pledged as security for a loan of nearly three thousand five hundred dollars; that the transfer was made by him and received by his wife with the intent to defraud his creditors;

that it was made while he was insolvent and left him without sufficient means to pay his creditors; that subsequently Grace C. Sparks sold the stock for ten thousand dollars, applying three thousand five hundred dollars of such sum to the discharge of a mortgage indebtedness on her separate real property; that the loan secured by said mortgage had been used by H. S. Sparks in his business, but had all been repaid except the said sum of three thousand five hundred dollars prior to his death; that said transfer was made partly for the purpose of reimbursing Grace C. Sparks on account of said loan and for her maintenance and support, but also for the purpose of defrauding creditors.

Appellants contend that the findings are not supported by the evidence in that Sparks was not insolvent when he made the trust-deed to his son and the transfer of stock to his wife, and that the intent on his part to defraud his creditors was not shown by the facts adduced at the trial.

We will first examine the transaction of H. S. Sparks with his son. When he made the trust-deed his nominal assets remaining after its execution were far in excess of his liabilities, but according to respondent's contention, the real assets omitted from the deed were of such a character that the court might well have concluded that Mr. Sparks knew them to be virtually valueless. This fact, coupled with the circumstance that without consideration he created a trust in favor of adult children is sufficient, say respondent's counsel, to sustain the burden of proof which was placed upon their client, to establish fraud affirmatively. It is perfectly true, as appellants insist, that conveyance of property to a kinsman is not, in itself, a badge of fraud (*Gray* v. *Galpin*, 98 Cal. 635, [33 Pac. 725]), but by a transaction of this sort in which a father, largely indebted, conveys property to a son, without any consideration, the "watchful scrutiny" of the court is invited. (2 Bigelow on Fraud, 192.) The note upon which plaintiff bases her claim was executed July 1, 1908, although the money had been loaned at times prior to that date. Before that time, H. S. Sparks had been engaged in loaning money in small sums for large interest and without security. On the date which the note bears, H. S. Sparks had due and owing to him by reason of notes covering such loans more than eleven thousand dollars. In December, 1907, he had loaned eleven thousand dollars to one Robert A. Brown.

This sum was secured by a bond executed by the Metropolitan Surety Company. In June, 1908, H. S. Sparks had attempted to realize on this bond, but both Brown and the Surety Company had refused payment. Subsequently a suit in his behalf was successfully prosecuted to judgment against the Surety Company but that corporation went through insolvency and the judgment was never satisfied. Mr. Sparks also had a claim against one Housel for two thousand dollars for commissions and he owned certain shares of the Pasadena Heights Tract. Of these shares the witness J. P. Sparks said "I think they were considered worth $6,000.00," but there was no other statement of their value. Including the Evans note the liabilities of H. S. Sparks on August 6, 1908, amounted to $8,910.00. His apparent assets not included in the trust deed of that date were:

Promissory notes representing loans which he had made and against which the statute of limitations had not run amounting to..............$11,555.00

The bond of the Metropolitan Surety Company, securing the Brown debt.............. ...  11,000.00

The claim against Housel......................  2,000.00

The 30 shares of Pasadena Heights Tract valued by J. P. Sparks at........................  6,000.00
_____

Making a total of.........................$30,555.00

Respondent contends that H. S. Sparks must have known the worthlessness of the notes (none of which has since been collected), of the bond (on which nothing has been since realized), and of the claim against Housel, (which has not been settled), and while she admits that the stock in the Pasadena Heights Tract was subsequently exchanged for the stock that was sold by Grace C. Sparks for ten thousand dollars, her counsel argue that this fact does not show that it was worth anything at the date of the execution of the trust-deed and that the opinion of J. P. Sparks placing the value at six thousand dollars was entitled to no weight. We cannot agree with this contention. It is true that the execution of the trust-deed under the circumstances might and should invoke the court's careful scrutiny, but the other evidence fails utterly to establish the insolvency of H. S. Sparks at that time. If the stock in the Pasadena Heights Tract was worthless, the burden was on the plaintiff to establish that fact and

the further circumstance that H. S. Sparks knew it was value-
less. The contrary has been shown. While it is true that
nothing was realized from the bond of the Metropolitan
Surety Company it was not shown that the corporation was
insolvent when the trust-deed came into existence nor that
H. S. Sparks should have known the worthless character of
the security. On the contrary he had the claim pursued to
judgment in his behalf, a fact indicating that he believed it
to be worth something. Nor does the failure subsequently to
collect the small notes or any of them prove their utter worth-
lessness in July, 1908, and the same may be said of the claim
against Housel. Opposed to the circumstance that the deed
of trust was made without consideration to a son of the
grantor, is the prompt and public recordation of the instru-
ment. In our opinion the respondent failed to establish
either insolvency or fraud in the transaction of 1908. It is
true that fraud may be shown and may invalidate a deed even
when the grantor does not entirely strip himself of assets,
where there is other compelling proof of a fraudulent intent
(*First National Bank* v. *Maxwell,* 123 Cal. 372, [69 Am. St.
Rep. 64, 55 Pac. 980]), but the mere circumstance that some
of the remaining assets of the grantor failed after the execu-
tion of the deed does not establish fraud on the part of this
man whose lips are now closed by death. He is beyond the
power of telling his design and purpose in creating the trust
and unless the circumstances, shown by competent evidence,
clearly prove an intent to defraud his creditors, we must
declare that plaintiff did not establish this branch of the case.
It is our opinion that she did not meet the burden of proof
in this regard.

When, on April 21, 1910, H. S. Sparks transferred the
thirty thousand shares of stock of the Mutual Laundry Com-
pany to his wife his liabilities amounted to a little more than
fifteen thousand dollars. But he still had the promissory
notes, the claim against Housel and the judgment against the
Metropolitan Surety Company for eleven thousand dollars
which would have supported a suit against the stockholders
of that corporation. He also possessed other assets which
were subsequently appraised in his estate at something more
than one thousand dollars. Nominally these assets amounted
to more than twenty-six thousand dollars. We cannot say
that proof of the failure of some of these choses to produce

any money subsequently, amounted to a showing of fraudulent intent on the part of H. S. Sparks.

He really was indebted to his wife for money which had been raised by a mortgage on her real property and used by him in his business. We cannot say that an assignment to her of his stock partly to protect her from possible loss in that transaction was something done in fraud of his creditors. On the contrary assignments for the protection of a wife even when based only upon "love and affection" have been upheld unless made with the purpose to defraud creditors (*Emmons* v. *Barton,* 109 Cal. 671, [42 Pac. 303]). But respondent contends that the assignment of April 21, 1910, is to be disregarded because, although Sparks gave written notice to the corporation of the transfer of the stock to Grace C. Sparks at that time, the actual transfer was not made until three days before his death, and in the meantime he had used the stock as collateral security for a loan. When he made the assignment to her Mr. Sparks told his wife that it had been made. It was valid as between the parties (Civ. Code, sec. 324) and amounted to a surrender to her of all of his rights. If, as the one in charge of her affairs he subsequently used the stock as collateral security for his debts, that does not alter the fact that at any time she might have demanded it from him and his intent, fraudulent or otherwise, must be measured as of the date upon which, by assignment, he made it possible for her to obtain exclusive control of the stock which from that moment was equitably hers unless fraud vitiated the transaction. As we have seen, such fraud was not established.

For the reasons above set forth the order from which defendants appeal is reversed.

Henshaw, J., and Lorigan, J., concurred.