[Civ. No. 21091.    Second Dist., Div. Two.    Nov. 16, 1955.]

MICHAEL MURPHY et al., Respondents, v. O. A. KELLY et al., Appellants.

[5]No contention is made that the form of the instruction was improper.

Willedd Andrews for Appellants.

Michael Lavelle for Respondents.

FOX, J.—Defendants appeal from a summary judgment in an action for the recovery of possession of personal property.

Plaintiffs, who are husband and wife, filed a "Complaint in Replevin," naming as defendants O. A. Kelly, Betty Lee Morales and Helen Clark individually and as trustees for Eden Foundation, Ltd. Eden was also named as a defendant and described as a copartnership composed of the individual defendants. The complaint alleged that plaintiffs were the owners, and entitled to the possession, of certain personal property, each item of which is recited by its description and individual value; that defendants took tortious possession of that property; that they have refused to accede to a demand to surrender possession to plaintiffs; and that they have continued to retain possession of the property, damaging plaintiffs in the sum of $10 per day. Plaintiffs prayed judgment for possession of the property, or for its

aggregate value of $5,777.50 in case delivery could not be effected, and for damages for its detention.

An answer was filed by all the named defendants, admitting that plaintiffs were entitled to possession of several designated items of personal property but denying every other material allegation in the complaint. By way of affirmative defense, defendants alleged that on June 28, 1954, defendant Eden Foundation, Ltd. (hereinafter called Eden), owned real property on which was located a residence unlawfully occupied by plaintiffs; that on that date, Eden served on plaintiffs a notice to pay rent of $100 per week within three days or quit the premises; that plaintiffs paid no rental from June 28th to August 15th, 1954, and owed Eden the sum of $600 for this period; that Eden is holding all of plaintiffs' personal property not exempt from execution; that upon a demand made by Michael Lavelle, plaintiffs' attorney, Eden offered to restore possession of the personal property listed in defendants' answer, but Mr. Lavelle demanded return of all or none of said property of plaintiffs in the possession of Eden; and that any damage suffered by plaintiffs has been caused by their refusal to accept possession of the personal property offered them and not by any conduct of Eden or its agents. In another affirmative defense, it is alleged that Eden is the owner of a judgment for the sum of $101 against plaintiffs obtained in the small claims court of Malibu Judicial District. No copy of the judgment was appended to the answer.

Thereafter, plaintiffs moved for a summary judgment on the ground that defendants had no meritorious defense. In support thereof affidavits were filed by plaintiff Michael Murphy and his attorney, Lavelle. So far as is here germane, Murphy's affidavit recites that on June 3, 1953, he and his wife took possession of a parcel of real property improved with a six-room dwelling (hereinafter referred to as the Topanga property) as vendees under a contract of sale with the owners thereof, S. H. and Marguerite Barton; that plaintiffs had complied with all terms of the contract except payment of the balance of the purchase price, which was to be paid when the Bartons delivered to them a grant deed; and that the Bartons had refused without right to deliver such deed. The affidavit then alleges that defendants subsequently informed plaintiffs they were negotiating with the Bartons for the sale of the property, at which time plaintiffs disclosed their contract with the Bartons, whereupon defendants stated

that in their opinion said agreement gave plaintiffs no right or interest in the Topanga property. The affidavit further states that on June 28, 1954, defendants informed plaintiffs they had purchased the Topanga property from the Bartons and served upon them the notice to pay rent or quit previously described; that plaintiffs replied they would not relinquish possession because of their prior rights and would not recognize defendants as their landlord; that plaintiffs and their children occupied the house until August 1, 1954, when they were forced to vacate because of certain described acts of harassment and intimidation by defendants. Murphy then avers that during their occupancy of the Topanga house, plaintiffs furnished it with the personal property described in their complaint, of which they are the sole owners; that on August 1, 1954, plaintiffs attempted to remove this personal property when defendants compelled them to vacate by the use of force and threats to do bodily harm to affiant, but defendants would not permit its removal, stating they had a landlord's lien thereon and that they had secured a judgment for $100 in the Malibu Small Claims Court.

The Lavelle affidavit identifies affiant as attorney for plaintiffs in the within action as well as in the Malibu action and avers that an appeal has been taken from the judgment in the latter action and a cash bond in the sum of $125 filed to stay execution. The affidavit recites that after written demand for return of the personal property was made, defendant Betty Lee Morales and affiant had a telephone conversation; that this occurred after the defendants were notified of the filing of the stay bond; that in the course of the conversation, affiant advised Mrs. Morales that plaintiffs' property was being wrongfully withheld; that Mrs. Morales asserted that defendants claimed a lien on the property because plaintiffs were indebted to them for rentals and because of the $100 judgment received in the small claims court; and that defendants were willing to release such portion of the personal property as was exempt from execution if plaintiffs would file their claim of exemption. Lavelle avers that he has checked with the clerk of the Malibu Small Claims Court and the constable and has been informed that while an execution has issued upon the aforementioned judgment, no levy thereunder has been made.

In opposition to plaintiffs' motion, two affidavits executed by defendant Betty Lee Morales, a trustee and chairman of the board of directors of Eden, were filed. In substance,

affiant declared that plaintiffs did not perform all the terms and conditions of the contract of sale of the Topanga property entered into with the Bartons and that the escrow set up to consummate the transaction was cancelled because of their default; that thereafter plaintiffs' offer to purchase said property for cash was rejected by the Bartons; that plaintiffs assured affiant several times between March 7 and June 28, 1954, that they would vacate the house in which they were residing within about a two weeks' period; that Mrs. Barton executed to Eden a deed dated June 25, 1954, vesting title to the Topanga property in Eden; that after receiving their notice to pay rent or quit plaintiffs failed to pay rent and that Eden obtained a judgment for $100 in the Malibu Small Claims Court for rent arrears. After denying the acts of harassment charged in Murphy's affidavit and after describing certain violent acts allegedly committed by plaintiffs, affiant states that Eden has "offered in their answer, to deliver all personal property referred to in plaintiffs' complaint exempt from execution . . ." In her second counteraffidavit, Mrs. Morales avers that she informed Mr. Lavelle that Eden was filing five additional complaints for weekly rent, each praying for the sum of $100; that she informed Lavelle that Eden was willing to release any personal property exempt from execution and would release all the property if a bond in the sum of $600 were posted; that Lavelle refused to accept anything less than all the property detained without posting any bond. She further states that Eden did not levy an execution on the small claims judgment because plaintiffs have appealed therefrom and the matter is pending.

Upon this showing, the court entered summary judgment in plaintiffs' favor. The judgment decreed that plaintiffs were entitled to regain possession of the property in question, together with damages in the sum of $1,640 for its detention, and costs. Pursuant to the requirement of section 667 of the Code of Civil Procedure, an alternative judgment was also rendered awarding plaintiffs the sum of $5,777.50, the alleged value of the property, in the event redelivery of the property could not be had.

Defendants' brief scarcely comports with the requirements of rule 15(a), Rules on Appeal, 36 Cal.2d 1, 15. Except for the topical index and the table of authorities in its preface, the body of the brief contains no headings or captions under which are separately presented a statement of the case and a concise statement of the propositions of law involved.

While such inadequate compliance with the rules is not to be condoned, we will nonetheless proceed to consider the single problem here involved, namely, whether or not the trial court abused its discretion in granting the summary judgment. (*Best* v. *Burch,* 132 Cal.App.2d 859, 861 [283 P.2d 262]; *Kelly* v. *Liddicoat,* 35 Cal.App.2d 559, 560 [96 P.2d 186]; *Bank of America* v. *Oil Well Supply Co.,* 12 Cal.App.2d 265, 270 [65 P.2d 885].)

Defendants contend that their answer and the Morales affidavits presented triable issues of fact and that it was therefore error to grant the motion for summary judgment.

█ The propriety of granting or denying a motion for summary judgment under section 437c of the Code of Civil Procedure is determined by the sufficiency of the affidavits that have been filed. (*Coyne* v. *Krempels,* 36 Cal.2d 257, 261 [223 P.2d 244]; *Kimber* v. *Jones,* 122 Cal.App.2d 914, 918 [265 P.2d 922]; *Cone* v. *Union Oil Co.,* 129 Cal.App.2d 558, 562 [277 P.2d 464].) In *Coyne* v. *Krempels, supra,* the Supreme Court held that a summary judgment for a plaintiff is proper where "the affidavits in support of his motion state facts that, if proved, would be sufficient to sustain judgment in his favor, and defendant does not 'by affidavit or affidavits . . . show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.'" In referring to the contents of the affidavits of a defendant in opposition to the motion, the third paragraph of section 437c provides, in its material portion, that such "affidavit or affidavits . . . shall be made by the . . . defendant, or by any person having knowledge of the facts, and together shall set forth facts showing that the party has a good and substantial defense to the plaintiff's action (or to a portion thereof) . . . The facts stated in each affidavit shall be within the personal knowledge of the affiant, shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto . . ." █ As this court has pointed out in several recent cases, while the pleadings serve to define the issues, the showing made in the affidavits is crucial, since there is often no genuine issue of fact although one may be raised by the formal pleadings; the affidavits permit the court to pierce the allegations of the pleadings to ascertain whether a genuine cause of action exists or whether the defense interposed is more apparent than real. (*Low* v. *Woodward Oil Co.,* 133 Cal.App.2d 116, 118 [283 P.2d 720];

*Maltby* v. *Shook,* 131 Cal.App.2d 349, 355 [280 P.2d 541];
*Cone* v. *Union Oil Co., supra,* pp. 562-563.)

It is clear from the Murphy affidavit that the personalty now held by defendants, whose recovery is the object of this action, is the property of the plaintiffs and that plaintiffs would be entitled to its immediate possession except as defendants might establish a lawful basis for its continued detention. It was therefore incumbent upon defendants, in their affidavits, to establish by facts within the personal knowledge of affiants, and to which facts the affiants could competently testify, that they had "a good and substantial defense" to the action or any portion thereof. Defendants sought to make such a showing by indicating that Eden was owner of the Topanga property, that a landlord-tenant relationship existed between Eden and plaintiffs and that plaintiffs' property was being withheld pursuant either to a judgment or possessory lien. The Morales affidavits, however, fall far short of meeting the requirements of section 437c.

She avers that the contract of sale of the Topanga property between plaintiffs and the Bartons was cancelled in December, 1953, because of plaintiffs' default. There is no affidavit from the Bartons to this effect, or from the escrow holder, or from any other party to that transaction. Mrs. Morales was a stranger to that contract. Her statement is no more than a mere conclusion of law, an expression of her personal opinion to which she could not competently testify. (*Maltby* v. *Shook, supra; Krupp* v. *Mullen,* 120 Cal.App.2d 53, 57 [260 P.2d 629].) Her affidavit also states that Eden is the owner of the Topanga property by virtue of a deed from the Bartons vesting title in Eden. However, neither the deed nor an authenticated copy thereof, from which affiant deduces that title to the property is vested in Eden, was attached to the affidavit. Under such circumstances, her statement of the legal effect of this document is a mere conclusion of law (*Low* v. *Woodward Oil Co.,* 133 Cal.App. 2d 116, 121 [283 P.2d 720]; *Cowan Oil & Refining Co.* v. *Miley Petroleum Corp.,* 112 Cal.App.Supp. 773, 780 [295 P. 504]; *Weichman* v. *Vetri,* 100 Cal.App.2d 177, 179 [223 P.2d 288]) and there being no reason shown to excuse production either of the original deed or an authenticated copy, she could not give competent testimony even to the contents of said documents. (*Low* v. *Woodward Oil Co., supra; Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d Supp. 745, 750 [68 P.2d 322].) Similarly, the reference in her affidavit to a judgment purportedly entered in the small claims court

in Malibu are incompetent as pure hearsay, since no certified copy of the judgment was appended to the affidavit. (*Low* v. *Woodward Oil Co., supra,* and cases there cited.)

However, even if it be assumed that plaintiffs defaulted in their contract for the purchase of the Topanga property and that Eden acquired title thereto by virtue of its deed from the Bartons on June 28, 1954, and that plaintiffs' occupancy of the realty thereafter was tortious, defendants' affidavits fail completely to show any justification for the detention of plaintiffs' personal property located on the premises. No facts are alleged which give defendants any color of lien upon such personalty, possessory or otherwise. No attachment was run and admittedly no execution was levied pursuant to the small claims judgment. Any right of defendants to assert a landlord's lien for unpaid rent upon the personal property here in question under section 1861a of the Civil Code would depend on plaintiffs' status as a *tenant* of defendants at the time of the detention of the property. But the undisputed facts clearly negative a landlord-tenant relationship. It is admitted that plaintiffs secured possession of the Topanga property under a contract of purchase entered into with defendants' predecessor in interest. ■ It is well established that one who enters into possession of land under an executory contract to purchase does not thereby become the tenant of the vendor, where there is no reservation of rent fixed in the contract. (*Pomeroy* v. *Bell,* 118 Cal. 635, 637 [50 P. 683]; *Belger* v. *Sanchez,* 137 Cal. 614, 618 [70 P. 738].) Plaintiffs' occupancy thereafter was under rights claimed as vendee by virtue of their transaction with the Bartons. ■ The fact that defendants served a notice to pay rent or quit upon plaintiffs did not create a landlord-tenant relationship where none had previously existed where, as here, plaintiffs refused to assent to the relationship. (*Pacific States Corp.* v. *Arnold,* 23 Cal.App. 672, 675 [139 P. 239].) Assuming that as owners of the property defendants could successfully maintain an action to recover the premises from plaintiffs as defaulting vendees of defendants' predecessor in interest (*Pomeroy* v. *Bell, supra*), and that they might recover for the reasonable value of plaintiffs' use and occupancy of the property after June 28, 1954 (*Herond* v. *Bonsall,* 60 Cal.App.2d 152, 155 [140 P.2d 121]), there was no such landlord-tenant relationship as would confer upon defendants the possessory lien on plaintiffs' personal property authorized by Civil Code, section

1861a. ■ Plaintiffs were simply rival claimants holding adversely to defendants; no landlord-tenant relationship springs from such a situation. (*Pico* v. *Phelan,* 77 Cal. 86 [19 P. 186].) ■ It being manifest that no basis for any lien existed in defendants and it clearly appearing from the affidavits that defendants were withholding plaintiffs' personal property without legal sanction, the summary judgment ordering its return to plaintiffs was proper.

However, the court erred in summarily granting the alternative judgment for the value of the property and in awarding damages for its detention. ■ An action for the recovery of personal property is what has been termed a mixed action, being partly *in rem* and partly *in personam.* So far as the specific recovery of the chattels is concerned, the action is *in rem*; it is *in personam* so far as damages are sought. (*Claudius* v. *Aguirre,* 89 Cal. 501 [26 P. 1077].) ■ While the title to, and right of immediate possession of, the property are the matters primarily to be determined therein (*Stockton Morris Plan* v. *Mariposa County,* 123 Cal.App.2d 509, 511 [267 P.2d 47]), the allegation of value serves a twofold purpose: (1) to enable plaintiffs' damage to be assessed should restoration of the property be impossible, and (2) to fix the amount of the undertaking if the auxiliary remedy of claim and delivery provided for by sections 509 to 520 of the Code of Civil Procedure is invoked. In their complaint, plaintiffs alleged the value of the property to be $5,777.50. Defendants' answer brought this in issue by their denial. Where an alternative judgment for the value of personal property is rendered in a replevin action against the possibility that delivery in kind cannot be had, there appears to be some divergence as to whether such value should be ascertained as of the date of its wrongful detention or as of the date of the trial. (10 Cal.Jur.2d, § 65.) However, in the case at bar, plaintiffs' affidavits are completely devoid of any evidentiary facts stating the value of the property at either of such times. All that appears on the subject is a mere reference to the complaint in Murphy's affidavit, which is incorporated by reference in its entirety therein. We need not dwell here on the unsatisfactory nature of this technique as a means of complying with the requirements of section 437c, since it not only makes difficult the task of preparing a counteraffidavit and invites a mere reincorporation therein of the answer on file, but seems out of harmony with that section, which demands that evidentiary facts be set out with particularity (*Low* v. *Woodward Oil Co., supra*) while plead-

ings are concerned with ultimate facts. Be that as it may, however, a reading of the complaint shows that it contains nothing other than a bald allegation as to the value of the property, not directed to any particular time. For aught that appears, such value may be the value of the property when it was new, or at some time other than that of (1) its wrongful seizure or (2) the date the matter is heard. ▮ It is fundamental that if a plaintiff is to prevail on his motion for summary judgment, his supporting affidavits must state facts covering every element necessary to sustain a judgment in his favor. (*Kimber* v. *Jones, supra*; *Hardy* v. *Hardy*, 23 Cal.2d 244, 245-247 [143 P.2d 701].) ▮ It is also axiomatic that the affidavits of the moving party must be strictly construed. (*Kimber* v. *Jones, supra*; *Travelers Indem. Co.* v. *McIntosh*, 112 Cal.App.2d 177, 182 [245 P.2d 1065])
▮ Plaintiffs' affidavits being fatally deficient in setting out the value of the property in dispute at any time at which its value could be properly measured, the summary judgment against defendants for the value of the property cannot stand.

The court also erred in summarily awarding plaintiffs the sum of $1,640 as damages for the detention of the property at the rate of $10 per day from August 15, 1954, to the date of the hearing. Defendants' answer denied such damage and alleged an offer to return various items of property. Mr. Lavelle's affidavit conceded that defendants, on or about August 21, 1954, "were willing to return such portion of said personal property as was exempt from execution if plaintiffs herein would file their claim of exemption therefor." Mrs. Morales' affidavit stated she informed Lavelle on the above occasion that Eden was willing "to release all the personal property exempt from execution and . . . Lavelle stated to affiant . . . that he refused to accept the offer and he would not take any of it unless he could have all of it . . ." If these facts in Mrs. Morales' affidavit showing an unconditional offer to surrender numerous items and its refusal by plaintiffs' attorney are true, then it might be found there was no wrongful detention as to a part of the property. In any event, these controverted issues present a triable question of fact as to whether plaintiffs might have mitigated their damages by accepting defendants' offer. ▮ It is fundamental that the plaintiff cannot be compensated for damages which he might have prevented by reasonable efforts or expenditures. (*Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 844 [147 P.2d 558]; *Schultz* v. *Town of Lakeport*, 5 Cal.2d

377, 382-383 [54 P.2d 1110]; *California Cotton etc. Assn.* v. *Byrne*, 58 Cal.App.2d 340, 345 [136 P.2d 359].) ▮▮▮ An issue of fact being disclosed as to whether, under the particular circumstances of the case, plaintiffs might have mitigated their damages by availing themselves of an opportunity to procure immediate possession of a portion of their property at any earlier stage in the proceedings, it was error not to relegate for trial the matter of damages sought for detention of the property.

The final paragraph of section 437c authorizes a partial summary judgment where it appears that defendant has no defense to a part of plaintiffs' claim. Plaintiffs herein are entitled to a partial summary judgment for the recovery of the personal property here in dispute. Since the alternative judgment for $5,777.50 and the award of damages for detention were improperly rendered because of the existence of triable issues of fact, plaintiffs' claim as to these items should be severed and the action may proceed as to these remaining claims if plaintiffs be so advised. If plaintiffs evince a desire to prosecute the disputed portions of their separable claim, no judgment may "be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award to the plaintiff . . . his claim so established by the proceedings herein provided for." (Code Civ. Proc., § 437c.) Thus, although plaintiffs are entitled to summary judgment for the recovery of their personal property, should they elect to proceed to trial of the remaining portions of their cause of action the statute controlling summary judgment procedure commands that final judgment must await the ultimate outcome to the trial of those issues.

The judgment is reversed with directions to take further proceedings in accord with the views herein expressed. Each side to bear its own costs on appeal.

Moore, P. J., and McComb, J., concurred.