[Civ. No. 26950. Second Dist., Div. Two. July 25, 1963.]

ELIZABETH B. JOHNSON, Plaintiff and Appellant, v. OLIVE C. DREW, Defendant and Respondent.

Marvin Zinman for Plaintiff and Appellant.

O'Melveny & Myers, Everett B. Clary and Louis T. LaTourrette for Defendant and Respondent.

ASHBURN, J.—Plaintiff Elizabeth B. Johnson appeals from a summary judgment entered against her in favor of defendant Olive C. Drew.

The action, brought by the assignee of the landlord's interest in leases of certain aircraft, sought recovery of unpaid rents and other charges accruing under the lease. Lessee was Seven Seas Airlines, Inc. Among the defendants are Urban L. Drew, Earl J. Drew, and their mother, said Olive C. Drew.

616

Plaintiff seeks recovery from defendants other than Olive C. Drew of $54,603.29, upon counts first, second and third of the amended complaint, and $30,297.64 upon the fourth and fifth causes of action. The allegation as to Olive C. Drew is "that on or about April 27, 1961, Defendant Urban L. Drew transferred to his mother, Defendant Olive C. Drew, certain real property in the County of Los Angeles; that such transfer was made without a fair consideration, and with the intent by said defendants to hinder, delay and defraud plaintiff in her just claim against Defendant Urban L. Drew." And the prayer: "[T]hat as against Defendant Olive C. Drew, the Court set aside the fraudulent conveyance of property to said defendant and declare the obligations herein sued upon binding upon said defendant to the extent of such conveyance." This allegation of fraud was denied by said defendant.

 Mrs. Drew's motion for summary judgment was supported by her own declaration (Code Civ. Proc., § 2015.5), which virtually ignores the following provisions of section 437c, Code of Civil Procedure: "The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto.

"The affidavit or affidavits in opposition to said motion shall be made by the plaintiff or defendant, or by any other person having knowledge of the facts, and together shall set forth facts showing that the party has a good and substantial defense to the plaintiff's action (or to a portion thereof) or that a good cause of action exists upon the merits. The facts stated in each affidavit shall be within the personal knowledge of the affiant, shall be set forth with particularity, and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto. . . ." Unless it affirmatively appears from other language in the declaration that declarant can testify competently to the facts alleged therein, the declaration is incompetent. (*Schessler* v. *Keck,* 138 Cal.App.2d 663, 669 [292 P.2d 314].)

 Defendant sought to establish her claim of absence of fraud by reference to copies of various instruments without offering any excuse for failure to present originals or certified copies. *Schessler* v. *Keck, supra,* 138 Cal.App.2d 663,

669-670: "The affidavit of plaintiff concludes as follows: 'Affiant hereby incorporates herein the attached Affidavits of Nell Robinson, Sallie May Ferguson, Clyde O. Wood, M.D., and Ann Storms; that the facts stated herein are within the personal knowledge of affiant, and that affiant, if sworn as a witness, can testify competently thereto.' Counsel for respondent asserted on oral argument, and examination of the original superior court file which is before us confirms the fact, that the documents attached to said affidavit are not original affidavits of Robinson, Ferguson, Wood and Storms, or any of them, but are copies of purported affidavits. They are not competent and must be disregarded. (*Gardenswartz* v. *Equitable etc. Soc.*, 23 Cal.App.2d Supp. 745, 751 [68 P.2d 322]; *Low* v. *Woodward Oil Co., Ltd., supra,* 133 Cal.App. 2d 116, 121, 122 [283 P.2d 720]; *Murphy* v. *Kelly, supra,* 137 Cal.App.2d 21, 28 [289 P.2d 565].)"

Mrs. Drew's declaration says that she, a real estate broker, purchased the property in question for her son Urban who paid $48,500, less the amount of a real estate commission, or $47,422 net for it. "Shortly after Urban L. Drew acquired the aforesaid property he came in need of funds and he requested declarant to sell the property for him for $48,500. In her capacity as a real estate salesman declarant made diligent efforts to sell said property at said price over a period of several months, including placing advertisements in the newspaper. Declarant was unable to make a sale and so ultimately, as a favor to her son, she agreed to purchase the aforesaid property from Urban L. Drew. On or about October 27, 1961, a Grant Deed from Urban L. Drew to declarant was recorded. A copy of said deed is attached hereto as Exhibit B. As payment for the property declarant agreed to pay Urban L. Drew the sum of $10,000 in cash, to give him a promissory note in the amount of $4,000, payable at the rate of $40 per month, and to take the property subject to the two trust deeds hereinabove described. The consideration thus paid to Urban L. Drew for said property was as follows:

| | |
|---|---|
| "Unpaid balance on first trust deed | $28,641.54 |
| "Unpaid balance on second trust deed | 5,948.58 |
| "Cash | 10,000.00 |
| "Note | 4,000.00 |
| "Total | $48,590.12" |

Respondent also said that in her opinion the fair market price of the property was no more than $48,590.12; and "[f]rom the

foregoing it will be observed that declarant paid to Urban L. Drew $1,168.12 more than Urban L. Drew paid for the property. Urban L. Drew did not make any substantial permanent improvements to the premises during the time that he owned them. Declarant handled the operation of the property for Urban L. Drew and personally knows all expenditures that he made.'' Also: ''Declarant has further made payments at the rate of $40 per month on the $4,000 note she gave to Urban L. Drew, plus a balloon payment of $500. These payments have been made to a trust fund at Glendale Federal Savings and Loan Association to which Urban L. Drew transferred all his right in and to said note. Declarant and Urban L. Drew are the trustees of this fund, and the beneficiary is Urban's child. The present unpaid balance on said note is $3,375.16. There is attached hereto as Exhibit F a copy of a payment book reflecting the aforesaid payments on said note.'' And: ''Declarant has fully paid the $10,000 in cash which she agreed to pay to Urban for the purchase of the aforesaid property. Urban was out of the country following declarant's purchase of the property, and she made a series of payments to or for Urban totaling $10,360.98. The sum of $360.98 represented the payment of funds declarant had been holding for Urban and were not connected with the real estate purchase. These payments were made by Money Transfer Order through the Security First National Bank, by purchase of stock and by wire. Receipts for these payments are attached hereto as Exhibit G. Declarant purchased the aforesaid property in good faith for a fair and reasonable consideration. Declarant denies that she at any time had any intent to hinder, delay or defraud plaintiff in the above entitled action, or any other person from collecting any just claim against Urban L. Drew.'' As above indicated, none of the exhibits was an original or an authenticated copy. No other affidavit was presented on behalf of Mrs. Drew and plaintiff filed but one.

In opposition to the motion plaintiff submitted a declaration of her attorney, Marvin Zinman, who said he had acted from time to time as attorney for International Airports, Inc., and its president, George E. Batchelor, ''and so acting declarant has become familiar with certain business transactions of said clients and the affairs of some of the persons and firms with whom it has dealt,'' including Seven Seas Airlines and Urban L. Drew; that Seven Seas Airlines is a Luxembourg corporation domiciled in that country; that Urban L. Drew

was president of that company at the time of its bankruptcy and at the time of assumption of its lease obligation; that that corporation became a bankrupt in Luxembourg on September 13, 1961, and then ceased all operations; the purported grant deed from Urban L. Drew to Olive C. Drew is dated September 15, 1961. Apparently these things were not within Mr. Zinman's personal knowledge and there is no attempt at explanation of how he acquired his assumed knowledge of same.

The unauthenticated copy of deed attached to Mrs. Drew's declaration bears date of September 15, 1961, acknowledgment of October 23, 1961 and recordation on October 27, 1961. Defendant does not state the date of execution of the deed or tell just when her son "came in need of funds" except to say it was shortly after he acquired the property, which she fixed as April 29, 1960. Plainly, she did not pay her son $10,000 cash when she received the deed; the copies attached to her declaration as exhibit "G" bear dates of November 9, 16, 17, 1961, December 8, 1961, January 22 and 25, 1962, and May 7, 1962, and some of the payments, if made, went to persons in Luxembourg and Switzerland.

The deed passed from the son to his mother at a time when he undoubtedly was in financial straits, "in need of funds," confronted with large obligations accruing under the lease which, as appears, he had assumed in writing. A writ of attachment, copy of which is attached to appellant's declaration, is in a sum in excess of $30,000, while the prayer of the complaint as above stated is for $54,000, plus $30,000. If made without consideration the deed would invite "watchful scrutiny" of the court (*Evans* v. *Sparks,* 170 Cal. 532, 534 [150 P. 372]), and we think this would be true here if the $10,000 cash part of the agreed consideration was not paid. Certainly the task of showing payment rests upon Mrs. Drew, who had denied the charge of fraud and as a basis for a summary judgment had undertaken to establish that there was no substance to the charge. Her efforts in this direction were somewhat casual.

Producing unauthenticated copies of documents, she says "she made a series of payments to or for Urban" totaling $10,360.98 (of which $360.98 was not connected with the real estate transaction), and "these payments were made by Money Transfer Order through the Security First National Bank, by purchase of stock and by wire. Receipts for these payments are attached hereto as Exhibit G." The "receipts" are not receipts at all. For instance, one of them is a copy of

a request for a money transfer in the sum of $2,092.50 to Robert Farquhar at Airfield Hotel in Republic of Luxembourg, with no explanation except that it was "sent to or for Urban"; no proof that she had that much money in the Security bank or that the bank actually transmitted it or that Farquhar got it or that Urban had authorized her to send any of his money to Farquhar. This order for transfer is dated November 16, 1961, two months after the probable date of the real estate transaction between the mother and son. A Western Union receipt for $500 to be sent to *Earl J. Drew* in Ann Arbor, Michigan, on November 9, 1961, has no explanation except the conclusion that it was a payment made "to or for Urban." Another money transfer order dated May 7, 1962 (after this action was commenced), calls for transfer of $900 to Earl J. Drew in care of a bank in Lausanne; it is infected with all the infirmities of the one directed to Farquhar and above mentioned. *Low* v. *Woodward Oil Co., Ltd.,* 133 Cal.App.2d 116, 121 [283 P.2d 720]: "Furthermore, there being no showing of the loss of the instruments referred to, or other circumstances which would excuse production either of the original or authenticated copies, affiant could not give competent testimony even to the contents of said documents. Under such circumstances, where the affidavit of a movant depends upon written documents, his affidavit is insufficient unless there is attached thereto the original documents, or a verified or certified copy of such instruments."

■ The affidavits of the moving party must furnish factual support covering every element required to establish his cause of action or defense (*Kimber* v. *Jones,* 122 Cal.App.2d 914, 919 [265 P.2d 922]; *Murphy* v. *Kelly,* 137 Cal.App.2d 21, 31 [289 P.2d 565]), and this is true though the opposing party presents no countershowing or an insufficient one. (*Wuelzer* v. *City of Oakland,* 170 Cal.App.2d 337, 340-341 [338 P.2d 912]: *Feierbach* v. *Wynn,* 199 Cal.App.2d 454, 455 [18 Cal.Rptr. 697]; *Taliaferro* v. *Taliaferro,* 179 Cal.App.2d 787, 791 [4 Cal.Rptr. 689]; *Callahan* v. *Chatsworth Park, Inc.,* 204 Cal.App.2d 597, 604-605 [22 Cal.Rptr. 606].)

■ "It is the rule in California that there can be no waiver in summary judgment proceedings of the right to object to matter inadmissible by virtue of its incompetency." (*Callahan* v. *Chatsworth Park, Inc., supra,* at p. 604.) ■ And "'[i]f any doubt exists whether summary judgment should be granted, it should be resolved against the moving party.'" (*Chilson* v. *P. G. Industries,* 174 Cal.App.2d 613, 615 [344 P.2d 868].)

Plaintiff's counterdeclaration states that Seven Seas Airlines became bankrupt in Luxembourg on September 13, 1961, that the purported grant deed to Olive C. Drew is dated September 15, 1961. This lapse of only two days before the date of conveyance of Urban's property to his mother suggests, though it does not prove, fraud (see, *Burrows* v. *Jorgensen*, 158 Cal.App.2d 644, 648 [323 P.2d 150]), and the fact of a transfer within the family calls for fuller and stricter proof of consideration than other similar transactions. ▪ *Menick* v. *Goldy*, 131 Cal.App.2d 542, 547 [280 P.2d 844]: ''The relationship of parent and child, when coupled with other suspicious circumstances, may be sufficient to raise an inference of fraud in the conveyance. (12 Cal.Jur. 974, § 15.) ' ''Any relation which gives rise to confidence . . . strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain or give color. to the transaction. . . . Wherever this confidential relation is shown to exist, the parties are held to a fuller and stricter proof of the consideration, and of the fairness of the transaction.'' ' (*Cioli* v. *Kenourgios*, 59 Cal.App. 690, 696-697 [211 P. 838]; *Walker* v. *Laugharn*, 44 Cal.App.2d 469, 474 [112 P.2d 695].)'' ▪ Plaintiff's declaration adds little to the factual showing of defendant, but the affidavits of the party opposing the motion ''need only disclose evidence supporting a possible defense or cause of action, they need not prove it.'' (*McHugh* v. *Howard*, 165 Cal.App.2d 169, 174 [331 P.2d 674].) The *McHugh* opinion also says: ''The better rule is that the facts alleged in the affidavits of the party against whom the motion is made, must be accepted as true, and those affidavits, to be sufficient, need not necessarily be composed wholly of strictly evidentiary facts.'' (P. 4.)

▪ Respondent's declaration is plainly inadequate to sustain a summary judgment, for it discloses directly and inferentially that there is a real issue of fact to be determined at a trial—whether the conveyance by the son to respondent was fraudulent.

▪ Pertinent here is the following portion of our opinion in *Escobedo* v. *Travelers Ins. Co.*, 97 Cal.App.2d 118, 127 [17 Cal.Rptr. 219]: ''Though it may be said that this opinion disregards some concessions made by appellant as to applicable law, it is nevertheless true that a reviewing court is never bound by concessions of counsel as to the law (*Desny* v. *Wilder*, 46 Cal.2d 715, 729 [299 P.2d 257]; *American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d 192, 200 [318

622

P.2d 84]), and is ' "at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not." ' (*Burns* v. *Ross*, 190 Cal. 269, 276 [212 P. 17] ; 4 Cal.Jur.2d § 483, p. 317.) "

Judgment reversed.

Fox, P. J., and Herndon, J., concurred.