[Civ. No. 13794.   First Dist., Div. One.   Oct. 6, 1948.]

RALPH A. NEMANICK, Appellant, v. HAROLD S. CHRISTENSEN et al., Respondents.

Jas. F. Boccardo and Jos. P. Kelly for Appellant.

J. T. Harrington for Respondents.

WARD, J.—This is an appeal by plaintiff from a judgment for the defendants after verdict by a jury.

The complaint sets forth a cause of action for an alleged breach of an employment contract whereby defendants employed plaintiff as a broker to dispose of certain packed and unpacked vegetable products in Monterey County. Plaintiff was to act as general manager, but under the "suggestions or directions" of defendants, during the calendar year 1946, and, subject to certain conditions, for the years 1947 and 1948. The amended answer admits the allegations of the complaint, the existence of the written contract, and alleges: ". . . that on the 18th day of April, 1947, plaintiff voluntarily and of his own accord, terminated his employment under said contract and at said time notified defendants that he was quitting said employment as of the 18th day of April, 1947, and that after said date, defendants could not further use the labels registered in the name of the plaintiff; . . . admit that plaintiff has heretofore offered to perform the terms, requirements and conditions of said contract on his part to be performed but allege that said offer was made subsequent to the time that plaintiff voluntarily terminated said employment and further, that at the time said offer was made, defendants had already employed a third person to perform the duties of plaintiff under said contract."

The indirect cause of the trouble between plaintiff and defendants arose over a claim made against the defendants by one Wynn, a watchman, for services rendered. Plaintiff advised that the claim should not be paid. On April 18, 1947, defendants reached the conclusion that it should be paid and directed plaintiff to make out a check for the amount. One of the defendants testified: "And I told him that we had decided to settle it for him to go ahead and have a check made out and signed and sent it in, that we wanted it settled. So then he was very calm in answering that afternoon. In answering, he says, 'If that's what you fellows think of my judgment and management,' he says, 'I am quitting.' So we didn't say anything and he didn't say anything for probably a minute or so. Then he brought up that—oh, I think he repeated again that—something about that he had 22 years experience in the business. And so I answered him again and told him that we wanted it settled and go ahead and make a check out and have it sent in. So then he thought that over for a couple of minutes and very calm he says, 'Well, if that's the case, I am quitting, and I am quitting tonight. I'll finish the day

out and as of tonight my labels stop and don't forget that.' "
Plaintiff's recollection of the incident is different in many
details. He mailed the check to the watchman following the
dispute.

█ It was the duty of the jury to determine whether
plaintiff repudiated the contract on the afternoon of the
discussion relative to the claim of the watchman. █ Repudi-
ation is a question of intent and is ordinarily determined as
a fact. (*Gold Min. & Water Co.* v. *Swinerton,* 23 Cal.2d 19
[142 P.2d 22].) Plaintiff cites *Sonnicksen* v. *Sonnicksen,* 45
Cal.App.2d 46 [113 P.2d 495] as authority for the following
statement: "Repudiation is a question of fact and intent and
must be determined by the facts in the particular case."

Plaintiff in his brief presents the question to be considered
on appeal as follows: "Can a written contract of employment
for a term of years be repudiated by the employee by a bare
statement to the effect that he is quitting, which statement is
made in the heat of an argument over an insignificant matter
and which statement is followed by continued performance
and conduct wholly inconsistent with repudiation, but to the
contrary indicating a clear intention to continue to perform
and be bound by the contract?"

No complaint is made as to instructions given or refused,
or as to the admission or rejection of evidence. The first point
stressed by plaintiff is that repudiation to be effective must
be clear, absolute and unequivocal. At the request of plain-
tiff the court gave the following instruction: "The defend-
ants, in this case, have set up a defense that plaintiff had
voluntarily terminated his employment; that is, that the
plaintiff himself had repudiated his contract of employment
and refused to perform his contract.

"In considering this defense and in judging the nature
and character of the refusal by one party, which will justify
nonperformance by the other, you are instructed that before
the defendants could avoid performance, plaintiff's refusal
to perform should appear to have been explicit, positive and
unequivocal. A mere assertion that a party will be unable, or
will refuse, to perform his contract is not sufficient; it must
be a distinct, unequivocal and absolute refusal to perform
the promise, and must be treated and acted upon as such by
the party to whom the promise was made. If you find from
all of the evidence in this case that the plaintiff's assertions,
if any, did not amount to a distinct, unequivocal and absolute
refusal to perform, which was understood, treated and acted

upon as such by the defendants, then you cannot find that the plaintiff voluntarily terminated his employment or repudiated his contract.

"If you find that a reasonable person in the position of the defendants would not have interpreted the plaintiff's statements or conduct as a repudiation by him of his contract, then I instruct you that the defendants were not justified in treating it as such, and they would not be excused from performance of the contract on their part. The defendants had to act reasonably, and if you find that their acts in treating the plaintiff's assertion or conduct as a repudiation were not reasonable, under all of the circumstances in this case, then they were not justified in treating such assertion or conduct as a repudiation on the part of plaintiff and they were not excused from performing their contract."

Plaintiff's second point is: "The verdict of the jury in the court below indicates an absolute failure to consider the surrounding facts and circumstances prior, concurrently with and subsequent to the alleged repudiation by the plaintiff."

Stated another way, plaintiff contends that there is no substantial evidence that the conduct of plaintiff constituted a disobedience of any reasonable direction made by defendants. This was entirely a question of fact. Whether there was any disobedience or not plaintiff gave notice that he had "quit" as of April 18, 1947.

The final point presented by plaintiff is: "Assuming, but not conceding, that the plaintiff did in the conversation with the defendants on April 18, 1947, verbally repudiate the contract, such repudiation was nullified and withdrawn by the plaintiff before the defendants elected to treat it as a termination of the contract or otherwise materially change their position to their damage in reliance upon said alleged repudiation." Defendants accepted plaintiff's statement as a termination of the contract. Following their conversation with plaintiff, they materially changed their position in reliance upon the repudiation. They hired plaintiff's successor to commence work the following morning and arranged to get labels other than plaintiff's. This point is merely a question of fact to be decided by the jury.

There is substantial evidence to sustain the verdict of the jury. The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.