[Civ. No. 24282. First Dist., Div. One. Mar. 27, 1968.]

S. E. THORNTON et al., Plaintiffs and Appellants, v. VICTOR MEAT COMPANY et al.. Defendants and Respondents.

Charles P. Scully, Donald C. Carroll and John B. Salazar for Plaintiffs and Appellants.

Angell, Adams & Holmes and Andrew H. Field for Defendants and Respondents.

SIMS, J.—Plaintiffs, who consist of Butchers Union, Local No. 120, its secretary-treasurer, and several members of the union, sought to recover, for all members similarly situated, wages allegedly due from the defendant meat processors under the provisions of a collective bargaining agreement which guaranteed the regular employees a five-day, forty-hour work week. The defendants, members of the Pacific Coast Meat Jobbers Association,[1] attacked the complaint by demurrer, and motion for summary judgment.[2] Plaintiffs have appealed from an adverse judgment entered following the granting of defendants' motion.

The background of the controversy can be ascertained from the complaint. Plaintiffs allege that on October 1, 1961, certain associations representing defendants, and defendants entered into a collective bargaining agreement with the union covering wages, hours and conditions of employment.[3] This agreement provided: "Regular employees shall be guaranteed five (5) days, forty (40) hours of work, unless they are advised before quitting time on Friday that they are being

---

[1] A separate defendant, who denies membership in any association, appeared separately, and after its demurrer was overruled filed an answer and cross-complaint. Neither that defendant nor those proceedings are before this court on this appeal.

[2] The practice of interposing a motion for summary judgment before answering has been upheld. (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 746-747 [19 Cal.Rptr. 709]; and see *Pianka* v. *State of California* (1956) 46 Cal.2d 208, 211-212 [293 P.2d 458]; and *Callahan* v. *Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 599 [22 Cal.Rptr. 606].)

[3] The agreement is attached to the complaint and incorporated in it by reference.

hired or brought to work for the following week on a predetermined short work week of less than five (5) days and less than forty (40) hours, or unless such work ceases to be available by reasons of an Act of God, or other reason beyond the control of the Employer. Whenever an employee is scheduled to work a short work week as set forth above, he shall receive ten percent (10%) in addition to his regular daily rate for all work performed during that scheduled short work week, even though such an employee may work forty (40) hours or more during that week." They allege that negotiations for a new contract had been in progress since July of 1964; that the old contract was to expire on Thursday, October 1, 1964; that the contract was extended until the negotiating session of Monday, October 5, 1964; that at that meeting a spokesman for the employers read a letter which stated that since the union would only agree to extensions of the agreement on a "day to day" basis, and not on a 72-hour basis, and since this was unacceptable to the defendants because of the nature of the meat business, the contract would expire that day;[4] that he stated all the plants would be closed down the next day; that contrary to the facts as stated by the spokesman, and the letter, the defendants had met on Saturday, October 3, 1964, and voted to lock out employees on Tuesday, October 6, 1964; that the defendants were advised by a memorandum dated October 3, 1964 on how to proceed with said lockout;[5] and that "in the week of October 5, 1964, and more particularly from Tuesday, October 6, 1964, the defendants, . . . defaulted in the performance of the . . . agreement by refusing to provide and failing to provide five days, 40 hours of work and by refusing to pay" pursuant to this agreement. Plaintiffs set forth $21,899.70 as the total wages due, and prayed for this sum, as well as interest.

In response to points made below by defendants in support of their motion, plaintiffs now contend (1) that the affidavit filed in support of the motion for summary judgment is insufficient to support the court's order granting the motion and the ensuing judgment; (2) that the record reveals that there were issues of fact to be tried; (3) that the state court has jurisdiction over the action and is not preempted by the jurisdiction conferred on the National Labor Relations Board or by earlier proceedings taken before that tribunal; (4) that

---

[4]This letter is attached to the complaint as an exhibit.

[5]This memorandum, as well as other material sent to the employers, is attached to the complaint,

there is no requirement that plaintiffs resort to grievance procedures or arbitration before resort to court action; (5) that the allegations of the complaint, as admitted, do not show that the contract provisions expired prior to, and that they were not applicable to, the alleged breach; and (6) that the admitted facts do not show that defendants were excused from performance because the employees refused to commit themselves to work the full week.

## I. *Sufficiency of the Affidavit in Support of the Motion*

The court has been referred to a plethora of cases defining the nature and purpose of the summary judgment procedure set forth in section 437c of the Code of Civil Procedure, and the principles governing the determination of the sufficiency of the affidavits presented by that section.[6] The terse statement in *R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373 [57 Cal.Rptr. 841, 425 P.2d 785], will suffice: ▇ "In considering a motion for summary judgment the trial court must determine whether the [opponent] has by affidavit presented any facts that give rise to a triable issue. [Cita-

---

[6]For cases upholding the sufficiency of the affidavits and a summary judgment entered thereon see: *Joslin* v. *Marin Municipal Water Dist.* (1967) 67 Cal.2d 132, 146-147 [60 Cal.Rptr. 377, 429 P.2d 889]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-263 [223 P.2d 244]; *Hayward Union High School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 108 and 115-123 [44 Cal.Rptr. 268]; *Dryer* v. *Dryer* (1964) 231 Cal.App.2d 441, 449-450 [41 Cal.Rptr. 839]; *Donnachie* v. *East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 175-176 [31 Cal.Rptr. 611]; *Weir* v. *Snow* (1962) 210 Cal.App.2d 283, 289-291 [26 Cal.Rptr. 868]; *University of Southern Cal.* v. *Weiss* (1962) 208 Cal.App.2d 759, 770 [25 Cal.Rptr. 475]; *Snider* v. *Snider, supra,* 200 Cal.App.2d 741, 747-749; *Apodoca* v. *Schiffahrtsgesellschaft De Vries & Co.* (1962) 199 Cal.App.2d 605, 607-608 [18 Cal.Rptr. 869]; *Bennett* v. *Hibernia Bank* (1960) 186 Cal.App.2d 748, 753 [9 Cal.Rptr. 896]; *Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229, 234-236 [7 Cal.Rptr. 497]; *Schessler* v. *Keck* (1956) 138 Cal.App.2d 663, 668-670 [292 P.2d 314]; *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 562-563 [277 P.2d 464]; *Schulze* v. *Schulze* (1953) 121 Cal.App.2d 75, 81 [262 P.2d 646]; and *Cowan Oil & Refining Co.* v. *Miley Petroleum Corp.* (1931) 112 Cal.App. Supp. 773, 778 [295 P. 504].

For contrary decisions see: *Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Borges* v. *Home Ins. Co.* (1966) 239 Cal.App.2d 275, 276-277 [48 Cal.Rptr. 540]; *Oliver* v. *Swiss Club Tell* (1963) 222 Cal. App.2d 528, 541-543 [35 Cal.Rptr. 324]; *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468-469 [33 Cal.Rptr. 661]; *Johnson* v. *Drew* (1963) 218 Cal.App.2d 614, 620-621 [32 Cal.Rptr. 540]; *Johnson* v. *Banducci* (1963) 212 Cal.App.2d 254, 260-262 [27 Cal.Rptr. 764]; *de Echeguren* v. *de Echeguren* (1962) 210 Cal.App.2d 141, 146-147 [26 Cal.Rptr. 162]; *American Soc. of Composers, Authors & Publishers* v. *Superior Court* (1962) 207 Cal.App.2d 676, 685-687 [24 Cal.Rptr. 772]; *Callahan* v. *Chatsworth Park, Inc., supra,* 204 Cal.App.2d 597, 602-605; *Rodes* v. *Shannon* (1961) 194 Cal.App.2d 743, 748-749 [15 Cal.Rptr. 349]; and *House* v. *Lala* (1960) 180 Cal.App.2d 412, 415-416 [4 Cal.Rptr. 366].

tions.] ■ The court does not resolve conflicting factual allegations, for the purpose of the procedure is to discover whether the parties have evidence requiring assessment at a trial. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for trial. [Citations.] ■ Accordingly, the affidavits of the moving party are strictly construed and those of his opponent, even if in conclusionary terms, are liberally construed. ■ Summary judgment is proper only if the affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue." (66 Cal.2d 373, 376-377.)

■ The affidavit of defendants' attorney accompanied their motion. He stated that he was the attorney for the Pacific Coast Meat Jobbers Association, which held a power of attorney for collective bargaining with the union, from defendants, its members; that the association had received a letter from the regional director of the National Labor Relations Board on October 8, 1964, containing a copy of "Charges Against Employer," signed by counsel for plaintiffs; that the charge against defendants was that on "October 6, 1964, while negotiations were pending with representatives of [Butchers' Union Local No. 120] the charging party, [the defendants] unlawfully and improperly locked out the employees of certain of its members in violation of National Labor Relations Act sections 8(a)(1) and 8(a)(3) [29 U.S. C., § 158, subds. (a)(1) and (a)(3)]. That in violation of Section 8(a)(3) said Employer did not transmit in a timely fashion the notices required under Section 8(d) [id., subsection (d)]"; that an investigation was conducted by the National Labor Relations Board to determine whether it should issue a complaint against defendants for unfair labor practices; that by letter of March 9, 1965, the regional director notified counsel for plaintiffs that further proceedings were not warranted; that plaintiffs requested review of this decision; that on May 12, 1965, the general counsel of the National Labor Relations Board denied plaintiffs' appeal by letter which recited, "[U]nder all the circumstances, including the fact that the membership of each of the Locals involved had voted to authorize strike action, the Union's failure to alleviate the Association's fear of a strike by agreeing to more than a day-to-day extension of the contract, and the perishable nature of the products involved, the burden of

establishing that the lockout of October 6, 1964, was unlawful could not be sustained." Copies of the charges and the letters of the regional director and the general counsel are appended to the affidavit. The attorney further alleged that plaintiffs had not requested that their demands for payment be subject to the grievance arbitration machinery pursuant to the collective bargaining agreement.

The statute requires: "The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto." (Code Civ. Proc., § 437c; 2d par.; and see *Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 115 [44 Cal.Rptr. 268]; *Johnson* v. *Drew* (1963) 218 Cal.App.2d 614, 616 [32 Cal.Rptr. 540]; *Johnson* v. *Banducci* (1963) 212 Cal.App.2d 254, 261 [27 Cal. Rptr. 764]; *Weir* v. *Snow* (1962) 210 Cal.App.2d 283, 290 [26 Cal.Rptr. 868]; *Callahan* v. *Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 604 [22 Cal.Rptr. 606]; *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 748 [19 Cal.Rptr. 709]; and *Rodes* v. *Shannon* (1961) 194 Cal.App.2d 743, 748 [15 Cal. Rptr. 349].)

There is no requirement, however, that the statutory language be included in the affidavit. In *Schessler* v. *Keck* (1956) 138 Cal.App.2d 663 [292 P.2d 314], the court disposed of a similar contention, as follows: "Appellant also argues that the moving affidavits are insufficient because they do not assert in the terms of the statute 'that the affiant, if sworn as a witness, can testify competently thereto.' It appears that defendants' affidavits speak of things that are within the personal knowledge of the respective affiants, and when that appears the statute has been complied with. This same point was made in *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558 [277 P.2d 464], and was disposed of in this language (p. 564): 'An examination of Kingman's affidavit discloses that he had been in charge of and personally conducted all negotiations with the union on behalf of the company during all the times mentioned in his affidavit. He thus made a sufficient showing of his competency to testify to the facts stated therein.' " (138 Cal.App.2d at p. 670. In addition to case cited, see *Dryer* v. *Dryer* (1964) 231 Cal.App.2d 441, 449-450 [41 Cal.Rptr. 839]; and *University of So. Cal.* v. *Weiss* (1962) 208 Cal.

App.2d 759, 764 and 770 [25 Cal.Rptr. 475].) The statements in the attorney's affidavit demonstrate that he conducted proceedings for the defendants before the National Labor Relations Board, and is competent to testify as to his personal participation and his observations.

The consideration to be given the exhibits attached to an affidavit must depend on the nature of the exhibit, the competency of the affiant to identify it, and the purpose for which it is offered. Unauthenticated copies of purported affidavits, or anonymous pamphlets, or photostatic or other copies offered without an affidavit of stipulation to their authenticity cannot be considered. (See *Johnson* v. *Drew, supra,* 218 Cal.App.2d 614, 616-617; *Donnachie* v. *East Bay Regional Park Dist.* (1963) 217 Cal.App.2d 172, 175-176 [31 Cal.Rptr. 611]; *Miller & Lux, Inc.* v. *Bank of America* (1963) 212 Cal.App.2d 719, 725 [28 Cal.Rptr. 401]; *Callahan* v. *Chatsworth Park, Inc., supra,* 204 Cal.App.2d 597, 605-606; and *Schessler* v. *Keck, supra,* 138 Cal.App.2d 663, 669-670.) In the instant case the attorney was competent to identify the documents as instruments received by him in the mail. Nevertheless, their binding effect on plaintiffs must be dependent on their authenticity as documents filed in proceedings in which plaintiffs were represented. In the face of objection, certification might be required. Here, however, the counteraffidavit filed on behalf of plaintiffs acknowledges the veracity of the allegations concerning the proceedings before the National Labor Relations Board and merely questions their legal effect.[7] Under these circumstances the matter is governed by the following passage from *Dryer* v. *Dryer, supra*: ''Here, the essential question to be decided by the trial judge was whether or not the former judgment constituted res judicata of the questions posed by the pleadings in the instant action. The determination of this fact rested almost completely on the pleadings in the first case. Besides a reference to such pleadings in the earlier case, copies of which were attached to his affidavit, Mr. Eaton, the affiant, further stated that he had been one of the attorneys for the same defendant in the first

---

[7]''That with respect to the Affidavit of Andrew H. Field, said Union admits that it brought and pursued unfair labor practice charges before the National Labor Relations Board but that with respect to both the subject of preemption and the subject of arbitration under the contract, the answers are legal in nature and adequately disposed of in the Memorandum of Points and Authorities filed simultaneously with this Affidavit . . . . Specifically, the unfair labor practice charge before the Board . . . never purported to deal with the contract claim being asserted herein; . . .''

case (action No. 89131), and that the parties and the properties referred to in the two suits were the same. It is true that the copies of the pleadings attached to the affidavit had not been certified as true copies by the clerk of the court; this should have been done as is indicated in the case of *Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d 745, 750 [68 P.2d 322]. However, there never has been any contention by the opposing side that the copies of the pleadings were not accurate in every respect. If there had been any inadvertence in setting forth the pleadings in the earlier case, it would have been easily ascertained. Neither the trial court nor opposing counsel has indicated that there was any difference between the copies of the pleadings in the affidavit and the actual original pleadings in the earlier case. It would seem clear, furthermore, that an attorney in the first case as well as in the second, such as Mr. Eaton, could properly testify to the other matters set forth in his affidavit. Thus, while the affidavit is not technically correct in all of its formal aspects, as indicated above, we believe that it would be picayunish to reverse a case for such minor and unimportant errors (Cal. Const., art. VI, § 4½)." (231 Cal.App.2d at p. 450.)

Plaintiffs not only admitted the existence of the Labor Board proceedings in the trial court (fn. 7 *supra*), but also acknowledge on appeal, "in reality there is no affidavit to support the Motion, *except on the issue of preemption.*" (Italics added.)

As just indicated, the plaintiffs contend that the court could not consider the other grounds urged by defendants in support of their motion. because the facts relating to them were not set forth in the affidavit filed in support of the motion. This argument misconstrues the scope of the record to be considered in ruling on defendants' motion. ▮▮ The principle that "[s]ummary judgment is proper only if the affidavits of the moving party are sufficient to sustain a judgment in his favor. . . ." (*R. D. Reeder Lathing Co.* v. *Allen, supra,* 66 Cal.2d at pp. 376-377) does not preclude the court from considering, in support of the movant's position, facts alleged and admitted in the pleading of an adversary, as distinguished from considering the party's own pleading in support of his position.

In *Joslin* v. *Marin Municipal Water Dist.* (1967) 67 Cal.2d 132 [60 Cal.Rptr. 377, 429 P.2d 889], the court pronounced the following rules: "Where a plaintiff moves for summary judgment, he cannot depend upon al'egations in his complaint

to cure deficient affidavits, but must set out in his affidavits facts in support of all elements entitling him to a recovery. [Citations.] Likewise, a moving defendant cannot rely on his answer in support of his deficient affidavit, as in such instance he would be in the same posture as a moving plaintiff seeking to rely on his own pleading. [Citation.] Nor can a party rely on his own pleadings in lieu or in support of affidavits in opposition to a motion. [Citations.]

"However the courts have heretofore recognized that a distinction exists where the party seeks to rely on his *adversary's* rather than his *own* pleadings to establish facts not contained in his affidavit. [Citation.] . . .

"The foregoing makes it clear that a moving defendant, unlike a moving plaintiff, need merely establish a defense to a claim theretofore asserted 'in the action.' His supporting affidavits are responsive in nature and are necessarily addressed to the complaint. It is within the contemplation of section 437c that the factual matters which he sets out in such affidavits are to take their significance upon a consideration of the complaint. In no way departing from the rule that such affidavits are to be strictly construed, it would nevertheless be placing form before substance if we were to require that a moving defendant's affidavits which assert facts establishing a defense when considered with the particular claim relied upon by plaintiff, must be deemed insufficient because they further fail to repeat therein those matters already asserted in the complaint. In such a case, the repetition of the substance of the complaint would be a useless act, the doing of which the law does not require. [Citation.]" (67 Cal.2d at pp. 147-149.)

The application of the rule last stated gives life to the defendants' allegation that no requests were received under the provisions dealing with grievance and arbitration of the agreement which is attached to and made a part of the complaint, and which admittedly was executed by and governed the respective parties during the period of its existence. Similar considerations apply to the issue of termination and the issue of excuse for performance. Defendants urge that each defense is revealed by the admitted allegations of the complaint.

The affidavit when construed as directed by *Joslin* is sufficient to raise the legal issues advanced by defendants in support of their motion.

## II. *Triable Issue of Fact*

The plaintiffs apparently concede, as was alleged in the counteraffidavit filed in the lower court, that the issues of preemption and arbitration are questions of law. They contend that the allegations of the counteraffidavit raise triable issues of fact with respect to the issues of termination, breach of the contract and excuse of performance. They further assert that a trial should be had because federal labor law and policy are involved. The application of federal law and policy does not create an issue of fact where none was present before. The federal law and policy if pertinent may be applied to the undisputed facts.

Examination of the counteraffidavit reflects that on the issues advanced by plaintiffs it follows the facts in the complaint which were admitted by defendants' failure to file an answer.[8] The counteraffidavit establishes one fact not directly set forth in the complaint. In the complaint it is alleged, by reference to an exhibit, merely that the employer-spokesman charged that the union would only extend the agreement after October 5th on a "day to day" basis. The counteraffidavit directly alleges, "that plaintiffs repeatedly offered to extend the contract on a day to day basis during negotiations." There is no dispute about the facts.

The admitted allegations of the complaint and the allega-

---

[8]The counteraffidavit states: "That none-the-less plaintiffs believe that they have a good cause of action upon the merits and will be able to show that a breach of the collective bargaining agreement occurred while it was still in full force and effect; that specifically the parties agreed to guarantee a week's work of five (5) days and forty (40) hours per week, a week being defined by the contract as being from Monday to Friday inclusive; that while negotiations were in progress for a new agreement, the parties agreed to continue the contract in effect until Monday, October 5, 1964; that no notices of a short work week were given by the defendants on Friday, October 2nd; that work was performed by employees on said date of October 5, 1964; that later on said date the defendants announced that they would lock out their employees; that in fact the defendants had met on Saturday, October 3, and voted to lock out their employees and that all the steps and instructions were immediately taken to that end; that for the balance of the week the defendants refused and failed to provide the aforesaid guaranteed work week;

"That plaintiffs did not prevent or delay their performance by defendants of their contractual obligations; that plaintiffs never struck or threatened to strike, or in any other way threatened defendants, or any of them; that plaintiffs repeatedly offered to extend the contract on a day by day basis during negotiations; that on October 5 defendants refused such extension, having already freely chosen to lock out their employees; that plaintiffs informed defendants at that time that their members would appear for work on October 6 with the expectation of working; . . ."

tions of the counteraffidavit which set forth conclusions of law do not raise issues which must be tried. (*Donnachie* v. *East Bay Regional Park Dist., supra,* 217 Cal.App.2d 172, 175; *Snider* v. *Snider, supra,* 200 Cal.App.2d 741, 751-753; *Schessler* v. *Keck, supra,* 138 Cal.App.2d 663, 669.) Defendants were entitled to have the legal sufficiency of their proffered defenses determined without further trial on issues of fact.

III. *Preemption by National Labor Relations Board*

The facts, as heretofore considered, show that plaintiffs alleged in their complaint and the counteraffidavit facts indicating that the defendants had locked out their respective employees. The affidavit submitted by defendants alleges and the counteraffidavit admits that this lockout was the subject of an unfair labor practice charge lodged with the National Labor Relations Board. If this were the sole ground of plaintiffs' action, the state court would not have jurisdiction. In *San Diego Unions* v. *Garman* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] the United States Supreme Court ruled: "When an activity is arguably subject to section 7 or section 8 of the [National Labor Relations Act; 29 U.S.C., §§ 157 and 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (359 U.S. at p. 245 [3 L.Ed.2d at p. 783]. See also, *Alexander* v. *Pacific Maritime Assn.* (9th Cir. 1963) 314 F.2d 690, 694; and *Bricklayers & Masons Union No. 1* v. *Superior Court* (1963) 216 Cal.App.2d 578, 582-584 [31 Cal.Rptr. 115].)

Here, however, the action purports to be predicated upon the provisions of the collective bargaining agreement. Under these circumstances the jurisdiction of the courts is not preempted by that conferred upon the National Labor Relations Board. In *Smith* v. *Evening News Assn.* (1962) 371 U.S. 195 [9 L.Ed.2d 246, 83 S.Ct. 267], the court held: "The authority of the [National Labor Relations] Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by section 301 [of the Labor Management Relations Act; 29 U.S.C., § 185(a)], but it is not exclusive and does not destroy the jurisdiction of the court in suits under section 301." (371 U.S. at p. 197 [9 L.Ed.2d at p. 249]. See also *Vaca* v. *Sipes* (1967) 386 U.S. 171, 179-180 and 183-184 [17 L.Ed.2d 842, 851-852, 853-854, 87 S.Ct. 903]; *Proctor & Gamble Independent Union* v. *Proctor & Gamble Mfg. Co.* (2d Cir. 1962) 312 F.2d 181, 186-187; and *Retail*

*Clerks Union, Local 770* v. *Thriftimart, Inc.* (1963) 59 Cal.2d
421, 423-425 [30 Cal.Rptr. 12, 380 P.2d 652].)

In *Smith* the court observed, "If, as respondent strongly
urges, there are situations in which serious problems will arise
from both the courts and the Board having jurisdiction over
acts which amount to an unfair labor practice, we shall face
those cases when they arise." (371 U.S. at pp. 197-198 [9
L.Ed.2d at pp. 249-250].) The defendants assert that this is
such a case, because the record shows that the plaintiffs
sought and were denied relief from the National Labor Rela-
tions Board before commencing their action. Although this
fact distinguishes the instant case from *Smith* and the cases
cited with it, it does not necessarily oust the court of a juris-
diction which has been established as concurrent. (See *Smith*
v. *Evening News Assn., supra,* 371 U.S. 195, 197 [9 L.Ed.2d
246, 249]; and see *Teamsters Local* v. *Lucas Flour Co.* (1962)
369 U.S. 95, 101 [7 L.Ed.2d 593, 597, 82 S.Ct. 571]; *Dowd Box
Co.* v. *Courtney* (1962) 368 U.S. 502, 505-506 [7 L.Ed.2d 483,
485-486, 82 S.Ct. 519]; *Retail Clerks Union, Local 770* v.
*Thriftimart, Inc., supra,* 59 Cal.2d 421, 423-425; and *McCar-
roll* v. *Los Angeles County etc. Carpenters* (1957) 49 Cal.2d 45,
52-53 [315 P.2d 322].) If issues which have been adjudicated
in the first proceeding arise in the second proceeding they
should be disposed of in accordance with established principles
of res adjudicata and collateral estoppel. (See *Teitelbaum
Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604
[25 Cal.Rptr. 559, 375 P.2d 439]; and *Solari* v. *Atlas-Universal
Service, Inc.* (1963) 215 Cal.App.2d 587, 592-593 [30 Cal.
Rptr. 407].) The pertinency of such principles to this action
is discussed below in the consideration of the merits of the
case.

The rights of the union and the employees to bring an
action in the state court for breach of the collective bargain-
ing agreement was not preempted because of concurrent juris-
diction of the National Labor Relations Board, or because of
resort to that tribunal on a charge of unfair labor practices.

IV. *Right to Arbitration*

Article XIV of the collective bargaining agreement
is entitled "Grievance and Arbitration."[9] It provides pro-
cedures for disposing of "any dispute that may arise as to the

[9]The Article reads as follows: "Section (a) Any dispute that may
arise as to the interpretation of this Agreement shall be brought to the
attention of the other party to this Agreement. Any dispute must be
taken up with the Employer within thirty (30) days of the date the
Union has knowledge thereof.

interpretation of this agreement." Admittedly the plaintiffs did not resort to those procedures before commencing this action.

Plaintiffs contend (1) that the provisions of Article XIV only apply to a dispute as to the *interpretation* of the agreement, and that there is no dispute as to the meaning of Article IV (b) which provides for the guaranteed work week, but only a dispute as to its *application* or *enforceability* with respect to a work week in which the agreement terminated; (2) that the dispute was expressly excluded from arbitration by the provision reading, "No controversy regarding hours or wages shall be subject to arbitration"; and (3) that the defendants by contending that the contract was terminated and locking out the plaintiff employees repudiated the agreement and precluded themselves from relying on the provisions for arbitration.

The defendants assert that if plaintiffs' rights are dependent upon the provisions of the contract, they are bound by the contract provisions for arbitration, and that the issue of arbitrability itself should be so arbitrated.

Paradoxically, it appears that the plaintiffs, who rely upon the provisions of the contract to establish their right to recovery, are asserting that the grievance provisions of the

---

"Section (b) Any disputes as to the interpretation of this Agreement which cannot be adjusted amicably between the Union and the Employer within Five (5) business days, shall be referred to a Board of Adjustment upon written request of either party.

"The Board shall consist of two (2) selected by the Union and two (2) selected by the Employer. The findings of this Board shall be binding upon both the Union and the Employer, provided that the Board shall not have the authority to change, alter or modify any of the terms or provisions of this Agreement. The decision of the Board shall be by a majority and shall be reached within a period of five (5) days from the date the controversy is presented for adjustment.

"Section (c) In the event that any dispute submitted to this Board of Adjustment cannot be settled within five (5) days, the issue in dispute shall be submitted for disposition to an impartial arbitrator. The party presenting the dispute shall request arbitration in writing not more than thirty (30) days after the dispute was first taken up with the other party, or the dispute will be considered to have been withdrawn and waived. If no response is made to the request for arbitration within thirty (30) days, the allegations shall be deemed to have been admitted and proved. Such impartial arbitrator shall not have authority to change, alter, add to, delete, amend or modify it. His decision on any matter submitted to him shall be final and binding on both parties to this Agreement. In the event an arbitrator is used, the cost of the arbitrator shall be borne equally by the parties involved.

"Section (d) No controversy regarding hours or wages shall be subject to arbitration.

"Section (e) There shall be no strikes, lockouts or other form of work stoppage while any matter, dispute or grievance is under process of adjustment or arbitration as provided for herein."

contract do not apply; whereas the defendants, who contend that the contract provisions for the guaranteed work week terminated, insist that the arbitration provisions should govern the dispute.

If the grievance and arbitration provisions of the collective bargaining agreement are applicable, the plaintiffs cannot proceed by judicial action. (*Republic Steel Corp.* v. *Maddox* (1965) 379 U.S. 650, 652-653 [13 L.Ed.2d 580, 582-583, 85 S.Ct. 614]; *Local Lodge No. 595 of Dist. No. 152* v. *Howe Sound Co., (Inc.)* (3d Cir. 1965) 350 F.2d 508, 511; *Don daRoza, Inc.* v. *Northern Cal. etc. Hod Carriers Union* (1965) 233 Cal.App.2d 96, 103 [43 Cal.Rptr. 264]; *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 563-564 [277 P.2d 464]; and see *Vaca* v. *Sipes, supra,* 386 U.S. 171, 184-185 [17 L.Ed.2d 842, 854-855].)[10]

Whether or not the plaintiffs were bound to arbitrate, as well as what issues are arbitrable are matters to be determined by the court on the basis of the contract entered into by the parties. (*John Wiley & Sons, Inc.* v. *Livingston* (1964) 376 U.S. 543, 546-547 [11 L.Ed.2d 898, 902-903, 84 S.Ct. 909]; *Atkinson* v. *Sinclair Refining Co.* (1962) 370 U.S. 238, 241 [8 L.Ed.2d 462, 465, 82 S.Ct. 1318]; *Steelworkers* v. *Warrior & Gulf. Nav. Co.* (1960) 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347]; *Local Union No. 998 etc. AFL-CIO* v. *B. & T. Metals Co.* (6th Cir. 1963) 315 F.2d 432, 436; *Proctor & Gamble Independent Union* v. *Proctor & Gamble Mfg. Co., supra,* 312 F.2d 181, 184; *McCarroll* v. *Los Angeles County etc. Carpenters, supra,* 49 Cal.2d 45, 65-66.)[11]

---

[10]The question of whether the civil action should be stayed or dismissed (cf. *Cone* v. *Union Oil Co., supra,* 129 Cal.App.2d 558, 564, with *Local Lodge No. 595 of Dist. No. 152* v. *Howe Sound Co., (Inc.)* (3d Cir. 1965) 350 F.2d 508, 511-512) is noted, but not determined because this case is disposed of on other grounds.

[11]Defendants have cited some authorities which tend to indicate that the question of arbitrability should itself be arbitrated. (See *Local No. 824, United Brotherhood of Carpenters, etc. AFL-CIO* v. *Brunswick Corp.* (6th Cir. 1965) 342 F.2d 792, 794; *Rochester Tel. Corp.* v. *Communication Workers of America* (2d Cir. 1965) 340 F.2d 237, 239; and *American Brake Shoe Co.* v. *Local No. 149* (4th Cir. 1961) 285 F.2d 869.) Examination of these cases reveals that each of the first two involved a subject matter that was arbitrable, and the question arbitrated was whether there had been compliance with the procedure leading to arbitration. In the third case, arbitration was agreed to, and the question of its scope arose thereafter. ''Whatever the merits of the procedure, we think it sufficiently outside the usual understanding of the relations of court and arbiter and their respective functions to assume that the parties expected a court determination of arbitrability unless they have clearly stated otherwise.'' (*McCarroll* v. *Los Angeles County etc. Carpenters, supra,* 49 Cal.2d 45, 66; and see *Steelworkers* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 583, fn. 7 [4 L.Ed.2d 1409, 1418].)

The principles applicable to this phase of the case recently have been collected and set forth in *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925 [59 Cal. Rptr. 713, 428 P.2d 849]. The opinion states: "Since the activities of the company affect interstate commerce, the issue of arbitrability must be resolved under the substantive federal law fashioned by the federal courts pursuant to the command of section 301 of the Labor Management Relations Act of 1947. (29 U.S.C. § 185(a) (1964).) . . .

"Congress strongly expressed its policy favoring arbitration in section 203(d) of the Labor Management Relations Act: 'Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . .' (29 U.S.C. § 173(d) (1964); see *United Steelworkers of America* v. *Warrior & Gulf Nav. Co.* (1960) 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347]) . . .

"Under federal law, the function of a court in deciding whether a dispute is subject to arbitration 'is confined to ascertaining whether the party seeking arbitration *is making a claim which on its face is governed by the contract.*' (Italics added.) (*United Steelworkers of America* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343].) 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*' (Italics added.) (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417])'' (66 Cal.2d at pp. 930-931. See, in addition to the cases cited, *John Wiley & Sons, Inc.* v. *Livingston, supra,* 376 U.S. 543, 548 [11 L.Ed.2d 898, 904]; *Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238, 241 [8 L.Ed.2d 462, 465]; *Teamsters Local* v. *Lucas Flour Co., supra,* 369 U.S. 95, 103-104 [7 L.Ed.2d 593, 598-599]; *Dowd Box Co.* v. *Courtney, supra,* 368 U.S. 502, 506-507 [7 L.Ed.2d 483, 486-487]; *Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448, 456-457 [1 L.Ed.2d 972, 980-981, 77 S.Ct. 912]; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188]; *Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 175 [14 Cal.Rptr. 297, 363 P.2d 313]; and *McCarroll* v. *Los Angeles County etc. Carpenters, supra,* 49 Cal.2d 45, 59-60.)

The application of these principles compels the rejection of the contention that the phrase, ''Any dispute that may arise as to the interpretation of this Agreement'' does not include a dispute as to the application or enforceability of any provisions of the agreement, when the meaning of that provision is clear and undisputed. No purpose would be served by securing an interpretation *in vacuo*. To limit the application of Article XIV to those cases where the facts were undisputed and only the meaning of the contract was in dispute would be an unwarrantedly strained and narrow construction. *''The inclusion of a 'no-strike' clause further indicates that the parties intended an all-inclusive coverage of the arbitration provision.''* (*Butchers' Union Local 229* v. *Cudahy Packing Co., supra,* 66 Cal.2d at p. 934.)

The exception, ''No controversy regarding hours or wages shall be subject to arbitration'' must be respected. (*Vaca* v. *Sipes, supra,* 386 U.S. 171, 184, fn. 9 [17 L.Ed.2d 842, 854]; *Republic Steel* v. *Maddox, supra,* 379 U.S. 650, 657-658 [13 L.Ed.2d 580, 585-586]; *John Wiley & Sons, Inc.* v. *Livingston, supra,* 376 U.S. 543, 553, fn. 6 [11 L.Ed.2d 898, 906] and text; *Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. 574, 584 [4 L.Ed.2d 1409, 1418]; *Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238, 242 [8 L.Ed.2d 462, 465]; *Local No. 725, Intl. U. of O. Engineers* v. *Standard Oil Co. of Ind.* (D.N.D. 1960) 186 F.Supp. 895, 898-899; *Communications Workers of America* v. *New York Tel. Co.* (S.D.N.Y. 1962) 209 F.Supp. 389, 391; *Underwood Corp.* v. *Local 267, Intl. Union of Elec., R. & M. Workers* (D.Conn. 1960) 183 F.Supp. 205, 208-211; *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d 169, 175; *McCarroll* v. *Los Angeles County etc. Carpenters, supra,* 49 Cal.2d 45, 67-69.) In determining the scope of this exception guidance is found in the following language from *Steelworkers* v. *Warrior & Gulf Co., supra,* ''In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.'' (363 U.S. at pp. 584-

585 [4 L.Ed.2d 1418-1419]. See also *O'Malley* v. *Wilshire Oil Co., supra,* 59 Cal.2d 482, 491.)

Reference to the agreement indicates that the subjects of "hours" and "wages" are respectively embraced in separate articles of the contract, Article IV and Article VIII. The former article includes in section (b) the provisions which gave rise to the controversy in this case (see text, *supra*). These provisions and the hours to which they refer are not the direct subject of the dispute, although the 32 hours remaining in the work week which commenced October 5, 1964 are incidentally involved. It is acknowledged that if the provisions are applicable, the employees were entitled to either the notice or the guaranteed hours of work. The kernel of the controversy is whether the parties agreed that the collective bargaining agreement, and more particularly the provisions of section (b) of Article IV, should apply after October 1, 1964. It transcends even the more integrated problem which might have arisen had the agreement terminated on a Friday or some day during the ensuing work week, although the solution of such a hypothetical question might throw some light on what was intended by the admitted fact that "the contract was extended until the negotiating session of October 5, 1964."

In line with the principles quoted above the exception for "hours" and "wages" should be limited to controversies in which the dispute directly involves the number of hours of employment, or the rate of wages to be paid. In a sense, innumerable types of disputes, whether arising in relation to union security, discharge, overtime, holidays, vacations, health and welfare payments, sick leave, pensions, jury duty, funeral leave, or seniority, may indirectly touch on hours or wages. The sensible construction is to so limit the exception, in the same manner that courts have limited an exception for functions of management, lest the exception swallow the whole. (See *Steelworkers* v. *Warrior & Gulf Co., supra,* 363 U.S. 574, 583-584 [4 L.Ed.2d 1409, 1417-1418]; *Butchers Union Local 229* v. *Cudahy Packing Co., supra,* 66 Cal.2d 925, 935; and *O'Malley* v. *Wilshire Oil Co., supra,* 59 Cal.2d 482, 489-492.) This construction protects the union's right to bargain with all legal weapons at its command for the hours of employment and the rate of wages, and at the same time gives recognition to the public policy for peaceful settlement of industrial disputes as acknowledged by the parties in that portion of the agreement prohibiting strikes, lockouts, or other forms of work stoppages.

The foregoing conclusion does not dispose of the controversy. The issue in dispute has been postulated as a controversy involving the intention of the parties with respect to the extension of the contract from its expiration date, Thursday, October 1, 1964, to the bargaining session on Monday, October 5th. The question remains whether this dispute is arbitrable under the terms of the contract.

The expiration of the term of the collective bargaining agreement (and of any agreed extension) does not terminate any rights, including the right and correlative duty to arbitrate, that may have accrued under the agreement. In *Local Lodge No. 595 of Dist. No. 152* v. *Howe Sound Co., (Inc.), supra,* the court stated, ''The claims for holiday pay and pro rata vacation pay are made by the Union under specific provisions of the collective bargaining agreement. The controversy on these claims is by now a classic illustration of a dispute which falls within a general arbitration provision such as that contained in the present agreement. The right to holiday and pro rata vacation pay exists, if at all, under the agreement. The fact that it would accrue and become payable after the expiration of the agreement would not eliminate the Company's obligation. Since the Union's claim is founded on the expired agreement it is also bound by the arbitration provision of the agreement, even though the issue may not have been raised until after the expiration of the agreement.'' (350 F.2d at p. 511, fns. omitted. See also *Republic Steel* v. *Maddox, supra,* 379 U.S. 650, 654-657 [13 L.Ed.2d 580, 584-585] (severance pay); *John Wiley & Sons, Inc.* v. *Livingston, supra,* 376 U.S. 543, 554 [11 L.Ed.2d 898, 907] (seniority, security and vacation pay); *Steelworkers* v. *Enterprise Corp.* (1960) 363 U.S. 593, 597-598 [4 L.Ed.2d 1424, 1428-1429] (back pay and reinstatement); *Textile Workers* v. *Lincoln Mills, supra,* 353 U.S. 448, 459 [1 L.Ed.2d 972, 982] (back pay for increased work loads); *General Tire & Rubber Co.* v. *Local No. 512 etc. AFL-CIO* (D.R.I. 1961) 191 F.Supp. 911, 914 (vacation pay); *Botany Mills, Inc.* v. *Textile Workers Union etc. AFL-CIO* (1958) 50 N.J.Super. 18, 27 [141 A.2d 107, 112-113] (vacation pay); and *In re Potoker* (1957) 2 N.Y.2d 553, 560 [141 N.E.2d 841, 844] (severance, dismissal and vacation pay). Note also *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d 169, 173 (vacation pay and holiday pay after termination of employment); and see discussion and cases cited *Butchers' Union Local 229* v. *Cudahy Packing Co., supra,* 66 Cal.2d 925, 932-933.)

On the other hand, if the agreement is in fact terminated, no rights accrue under its provisions subsequent to the termination date. In *Proctor & Gamble Independent Union* v. *Proctor & Gamble Mfg. Co., supra,* the court reversed a summary judgment which, at the instance of the union, compelled the employer to arbitrate disciplinary measures, and ordered summary judgment for the employer. "[T]he activities on which the discipline was based, the disciplinary measures the propriety of which the union seeks to arbitrate, and the filing of the grievances all occurred in the interval between the termination date of the old agreement and the effective date of the new agreement." (312 F.2d at p. 183.) The court observed, "It is perfectly natural and entirely customary that, in the short hiatus which is expected to occur between the expiration of one collective agreement and the negotiation of the next, no great change will be made in the existing conditions. Sometimes, as here, a part of the hiatus is covered by an agreed-upon extension of the terms of the expiring agreement. Where no such extension is negotiated, or where the period of the extension has also expired, there is no ground whatever for considering that the old agreement still governs the relationship of the parties." (*Id.,* p. 184.) The court concluded: "Grievances which are based upon conditions arising *during the term of the agreement to arbitrate* are arbitrable after that term has ended. This is the real meaning of the cases cited by the appellee. See e.g., *United Steelworkers* v. *Enterprise Wheel & Car Corp.* (1960) 363 U.S. 593 [4 L.Ed.2d 1424, 80 S.Ct. 1350]; *Potoker* v. *Brooklyn Eagle, Inc.* (1957) 2 N.Y.2d 553, 161 N.Y.S.2d 609 [141 N.E.2d 841]. This principle has no application to grievances which arise *after the expiration* of the agreement to arbitrate." (*Id.,* at p. 186. See also *Industrial Union of Marine & Shipbuilding Workers* v. *National Labor Relations Board* (3d Cir. 1963) 320 F.2d 615, 618-619; *Local Union No. 998, etc. AFL-CIO* v. *B. & T. Metals Co., supra,* 315 F.2d 432, 436-437; and *Paterson Parchment Paper Co.* v. *International Brotherhood of Paper Makers* (3d Cir. 1951) 191 F.2d 252, 254 (cert. den. (1952) 342 U.S. 933 [96 L.Ed. 694, 72 S.Ct. 376] reh. den. (1952) 342 U.S. 956 [96 L.Ed. 710, 72 S.Ct. 625]].)

In this case the right upon which plaintiffs' claims are predicated is of mixed origin. The failure of the employers to give any notice on the Friday which fell during the extended term of the collective bargaining agreement did not give rise to any compensation or tangible benefit, such as severance or vacation pay, pension fund payments and the like. At best it

gave an inchoate right to employment which would come into fruition with rewarding compensation when the employee performed the promised employment. This employment, according to the allegations of the complaint, was to be tendered to the employees and be performed by them for four days after the expiration of the agreement. It is these days that are in question.

If the question arose in connection with a period related to the term of the original contract which expired October 1, 1964 (such as a refusal to furnish work on Friday, October 2d, when no notice had been given on the previous Friday that the work week would be foreshortened), or in connection with any unconditional extension of the contract, it could well be recognized that the inchoate right to employment carried with it the right to arbitrate any dispute concerning that employment.

There is one factor in this case which precludes that result. It is acknowledged by plaintiffs (see fn. 8, *supra*) that they "offered to extend the contract on a day to day basis during negotiations." This offer implicitly reserved the right to terminate the contract and strike on any day subsequent to the Monday to which the contract had been extended. It is patently inconsistent with the obligation of the employees to present themselves for work during the claimed "guaranteed" work week. Under these circumstances the extension of the contract was not unconditional, did not presuppose a full work week following the day to which it was extended, and carried with it no right to arbitrate the question of employment for the remainder of that week.

Moreover, there is merit to plaintiffs' contention that the defendants cannot rely upon the arbitration clause. Their resort to the lockout (whether justified or not) is inconsistent with any concept that the right to pursue the grievance procedure and arbitration persisted, because the contract prohibited a lockout during such proceedings. In *Drake Bakeries* v. *Bakery Workers* (1962) 370 U.S. 254 [8 L.Ed.2d 474, 82 S.Ct. 1346] the court rejected the contention that the employer was relieved of the obligation to arbitrate its claim for damages for an allegedly unauthorized strike, because there had in fact been a breach of a no-strike clause. The court noted, "The company has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions. Instead, it has sued for damages for an alleged strike and, as

far as this record reveals, the contract continued in effect, as did the promises of the parties to arbitrate and the promise of the union not to strike.'' (370 U.S. at p. 261 [8 L.Ed.2d at p. 479].) The opinion states: ''We do not decide in this case that in no circumstances would a strike in violation of the no-strike clause contained in this or other contracts entitle the employer to rescind or abandon the entire contract or to declare its promise to arbitrate forever discharged or to refuse to arbitrate its damage claims against the union.'' (*Id.*, p. 265. See also *Vaca* v. *Sipes, supra,* 386 U.S. 171, 185 [17 L.Ed.2d 842, 854].) Here by the lockout the employers did treat the collective bargaining agreement as terminated on October 5th, and in effect used self-help, inconsistent with the no-lockout clause of the grievance and arbitration provision, to enforce their view that no employment need be tendered to the employees. Under these circumstances it would be improper to now allow the employers to insist on arbitration over the objection of the union and the employees. (See *Local 659, I.A.T.S.E.* v. *Color Corp. of America* (1956) 47 Cal.2d 189, 197-198 [302 P.2d 294].)

## V. *Failure to State a Cause of Action*

The camel, having tread this tortuous path, has his head under the edge of the tent, but his ability to capitalize on his position is subject to one more ordeal. Defendants also contend that the admitted facts, as supplemented by those set forth in the affidavits, conclusively show that plaintiffs have no cause of action, and that they therefore sustain the summary judgment.[12]

Plaintiffs contend that the right to employment for the ensuing week accrued when the defendants failed to give any notice on Friday, October 2d (see *Hangen* v. *Hangen* (1966) 241 Cal.App.2d 11, 14 [50 Cal.Rptr. 203]; and *Van Hook* v. *Southern Cal. Waiters Alliance* (1958) 158 Cal.App.2d 556, 565 [323 P.2d 212]); that the collective bargaining agreement governed the terms of the employment of each individual employee (see *Levy* v. *Superior Court* (1940) 15 Cal.2d 692, 699 [104 P.2d 770, 129 A.L.R. 956]; *Division of Labor Law Enforcement* v. *Dennis* (1947) 81 Cal.App.2d 306, 308-309

[12]The circumstance that the merits of the case are clearly in favor of one party over another would not preclude arbitration, if the controversy was otherwise arbitrable. (*Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343]; *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 933 [59 Cal.Rptr. 713, 428 P.2d 849]; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 488 [30 Cal.Rptr. 452, 381 P.2d 188].)

[183 P.2d 932] ; Lab. Code, §§ 222, 223, 225 and 227) ; and that such right as accrued prior to the termination of the collective bargaining contract can be enforced. (See *Grant* v. *Aerodraulics Co.* (1949) 91 Cal.App.2d 68, 73 [204 P.2d 683] ; *Sanborn* v. *Ballanfonte* (1929) 98 Cal.App. 482, 488 [277 P. 152] ; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 296, pp. 323-324; and more particularly *Local Lodge No. 595 of Dist. No. 152* v. *Howe Sound Co., (Inc.), supra,* 350 F.2d 508, 511, and cases cited therewith on severance pay, etc.) It is also suggested that the employment was on a weekly basis, and that it should be presumed that the employment on October 5th was to be on the same basis. (Lab. Code, §§ 3001 and 3003.) This latter contention adds nothing to plaintiffs' standing. They must look to the contract to establish the weekly wage on which to predicate that position. If the contract was only extended conditionally, both the premises of an accrued right to employment, and that of a hiring on a week-to-week basis fall.

The defendants do assert that in agreeing to extend and to continue the collective bargaining contract until the negotiating session on Monday, October 5, 1964, it was not intended to give the employees a right to employment past that date; and that the sole purpose of the extension was to maintain the status quo and prevent a strike or lockout while negotiations continued. They contend that the relative position of the parties and the circumstances under which the extension was agreed to compel this interpretation. (See Civ. Code, §§ 1636 and 1647.) From these postulates they conclude that any question of employment after October 5, 1964, was not covered by the terms of the contract. (See *Proctor & Gamble Independent Union* v. *Proctor & Gamble Mfg. Co., supra,* 312 F.2d 181, 184 and 186, and other cases cited above in connection with circumstances arising after the termination of the contract.)

The record is singularly silent on the issue of the purpose, intent and scope of the agreement to extend the collective bargaining contract. In accordance with the rules first reviewed in this opinion, the failure of the defendants to answer the allegation in the complaint "that . . . the contract was extended with the negotiating session of October 5, 1964," and the failure to controvert the declaration in the counteraffidavit that "the parties agreed to continue the contract in effect until" that day, must be construed against the defendants. The most that can be said is that there is a possi-

ble ambiguity, or conflict, which appears in attempting to reconcile the agreement to extend the contract for a limited period with the contract provisions for a guaranteed work week. The necessity for parol evidence to resolve this ambiguity evinces a question of fact which precludes a summary judgment. (See *American Soc. of Composers, Authors & Publishers* v. *Superior Court, supra,* 207 Cal.App.2d 676, 690-691.)[13]

The record, however, does disclose other facts which preclude plaintiffs' recovery. If it be assumed that the defendant-employers had an obligation on October 5th to furnish the plaintiff-employees five days and 40 hours of work during that week, that obligation terminated when plaintiffs limited their offer to continue working ''on a day to day basis during negotiations.''

''The rule, of course, is well established that a party to an executory bilateral contract may avail himself of a refusal of performance made by the other party in advance of the time of performance either as a basis for an action for damages or may himself set up such refusal as a defense to his own performance. (Civ. Code, secs. 1440, 1511, par. 3, 1515, and 6 Cal.Jur., pp. 457 to 460; *Alderson* v. *Houston,* 154 Cal. 1, 12 [96 P. 884]; *Howard* v. *Galbraith,* 13 Cal.App. 373, 377 [109 P. 889]; 13 Cor.Jur. 653, 654.)'' (*California Canning Peach Growers* v. *Harris* (1928) 91 Cal.App. 654, 656 [267 P. 572]. See also *Guerrieri* v. *Severini* (1958) 51 Cal.2d 12, 18 [330 P.2d 635]; and *Gold Min. & Water Co.* v. *Swinerton* (1943) 23 Cal.2d 19, 27-29 [142 P.2d 22]; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 274, pp. 303-304; and *cf. Local 659, I.A.T.S.E.* v. *Color Corp. of America, supra,* 47 Cal.2d 189, 198.)

Generally a mere threat not to perform will not constitute a repudiation. (*Gold Min. & Water Co.* v. *Swinerton, supra,* 23 Cal.2d 19, 28; *Salot* v. *Wershow* (1958) 157 Cal.App.2d 352, 357 [320 P.2d 926].) However, in *Nemanick* v. *Christensen* (1948) 87 Cal.App.2d 844 [197 P.2d 785], the employee's statement that he was quitting was found to be a repudiation which relieved the employer who had hired a replacement from liability under the contract of employment. (87 Cal.App. 2d at pp. 846-847.) Under the circumstances of this case the

---

[13]It is also conceivable that a probe of the facts in connection with the agreement to extend the contract would reveal that the agreement itself was advice that the forthcoming work week was predetermined to end on Monday with the agreed extension of the contract unless a further extension was effected.

representation made on behalf of the employees constituted a refusal to be bound to work on the remaining four days of the week. The defendants were entitled to treat this refusal as a repudiation of the rights, if any, which might have accrued and survived the termination of the contract. They were free to, and did accept the repudiation by closing down their plants.

It is unnecessary to determine whether the proceedings before the National Labor Relations Board furnish grounds for collateral estoppel which would preclude the plaintiffs from contesting the defendants' right to deny them employment on the remaining days of the work week commencing October 5th. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 604; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892]; and *Solari* v. *Atlas-Universal Service, Inc., supra,* 215 Cal.App.2d 587, 592-593.)

In their reply brief plaintiffs seek to apply the doctrine of collateral estoppel to their advantage by reference to proceedings, not a part of the record, in which the Unemployment Insurance Appeals Board determined that the plaintiff-employees had involuntarily left their work and were not precluded from benefits by the provisions of section 1262 of the Unemployment Insurance Code, and in which the Superior Court in and for the City and County of San Francisco upheld that determination by denying a writ of mandate. (Cf. *Coast Packing Co.* v. *California Unemp. Ins. Appeals Board* (1966) 64 Cal.2d 76, 79-80 [48 Cal.Rptr. 854, 410 P.2d 358].) Those proceedings are not properly before this court. ''A party may not submit motions of the kind here and then when the party receives an adverse decision, contend that he should be given another opportunity when he neither requested it nor showed in the trial court that he had other facts to present.'' (*Hayward Union etc. School Dist.* v. *Madrid, supra,* 234 Cal. App.2d 100, 128.) Moreover, it is apparent that the issue of whether plaintiffs' cessation of labor was voluntary or involuntary does not control the issue of whether defendants had an obligation to furnish them employment.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 17, 1968, and appellants' petition for a hearing by the Supreme Court was denied May 22, 1968.